[Cite as *Bosky Group, L.L.C. v. Columbus & Ohio River RR. Co.*, 2017-Ohio-8292.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BOSKY GROUP, LLC, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| COLUMBUS & OHIO RIVER RAILROAD | : | Case No. CT2017-0027 |
| COMPANY, et al., | : | |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Muskingum County
                                                        Court of Common Pleas, Case No.
                                                        2013-0161

JUDGMENT:                                     Affirmed

DATE OF JUDGMENT:                       October 19, 2017

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

ROBERT J. MANN                             PHILIP F. DOWNEY
MARY SPAHIA-CARDUCCI                 JONATHAN P. CORWIN
Mann & Carducci Co., LPA                DANIEL E. SHUEY
1335 Dublin Rd., Suite 212-A             Vorys, Sater, Seymour and Pease LLP
Columbus, Ohio 43215                      P.O. Box 1008, 52 East Gay Street
                                                        Columbus, Ohio 43216-1008

*Baldwin, J.*

{¶1}   Defendant-appellant The Columbus & Ohio River Railroad Company appeals from the March 29, 2017 Judgment Entry of the Muskingum County Court of Common Pleas granting the Motion for Summary Judgment filed by plaintiff-appellee Bosky Group, LLC and denying the Motion for Summary Judgment filed by defendant-appellant.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellee Bosky has been the owner since 2006 of approximately 43.7 acres of real property (Parcel No. 66-20-09-10-000) located in Muskingum County, Ohio. This property shall, hereafter, be referred to as the "subject property" and is located near the Village of New Concord, Ohio. The northern boundary of the subject property has frontage along US 40/22.  Appellee also owns a 92.37 parcel contiguous to the subject property and two other small parcels. While Rix Mills Road is to the east of the parcels, Homestead Drive is to the west. Appellant The Columbus & Ohio River Rail Road Company ("CUOH") operates a railway line that runs along the north end of the subject property and is to the south of and parallel to US 40/22.

{¶3}   Appellee is the successor in title and traces his title in the subject property back to grantor Samuel Cummins. As evidenced by an instrument signed in 1852 and recorded on February 16, 1899, Cummins granted the Central Ohio Railroad Company, appellant's predecessor, a right to locate a railroad across the northern boundary of the subject property. The instrument provides, in relevant part, as follows:

In consideration of one hundred eighty dollars to me paid by the

Central Ohio Rail Road Company, I Samuel Cummins of Union Township

Muskingum County Ohio do hereby grant and release to said Company the right to enter upon any lands I own which lie on the line of said Company's road… and to hold and use a strip of said land…for the purposes of a rail road…not exceeding one hundred feet in width…The said Company to construct two good crossings over said rail road track one between my house and barn near to the point where my road now passes from the National road to my barn, the other at some point towards the east boundary line of my land convenient for the purpose…."

**{¶4}** Cummins' property was later subdivided. To the west of the subject property is a parcel owned by David L. Green that was originally part of the Cummins property that currently has a railroad crossing. There is not a crossing on the eastern 43.7 acres, which has been owned by appellee since 2006, and appellee contends such land is legally landlocked. There is no road connecting to the subject property. Appellee wants to develop the subject property for commercial, residential and other purposes.

**{¶5}** After appellant declined to construct a crossing that will enable appellee to develop its property, appellee filed a complaint against appellant for declaratory judgment, specific performance, breach of contract and estoppel on April 8, 2016. Appellant filed a Motion for Summary Judgment on November 30, 2016 and appellee filed a Motion for Summary Judgment on December 14, 2016. Appellant, on February 3, 2017, filed a motion seeking to strike evidence submitted by appellee in support of its Motion for Summary Judgment on the basis that the evidence was untimely and otherwise improper.

**{¶6}** Pursuant to a Decision filed on March 14, 2017, the trial court granted appellee's Motion for Summary Judgment while denying that filed by appellant. The trial

court directed counsel for appellee to prepare the final entry. A final Judgment Entry was filed on March 29, 2017.

{¶7}   Appellant now appeals from the trial court's March 29 2017 Judgment Entry, raising the following assignments of error on appeal:

{¶8}   I., II. THE TRIAL COURT ERRED BY GRANTING BOSKY'S MOTION FOR SUMMARY JUDGMENT AND DENYING CUOH'S MOTION FOR SUMMARY JUDGMENT.

{¶9}   III. THE TRIAL COURT'S JUDGMENT ENTRY IMPROPERLY EXCEEDS THE RIGHTS GRANTED BY THE CUMMINS INSTRUMENT AND/OR THE RELIEF REQUESTED BY BOSKY.

{¶10}  IV. THE TRIAL COURT ERRED BY NOT GRANTING CUOH'S MOTION TO STRIKE.

I, II

{¶11}  Appellant, in its first two assignments of error, argues that the trial court erred in granting appellee's Motion for Summary Judgment while denying that filed by appellant.

{¶12}  Civil Rule 56(C) states, in pertinent part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

**{¶13}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

**{¶14}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**{¶15}** At issue in the case sub judice is whether or not the promise, contained in the Cummins instrument, to construct two crossings is binding on appellant. Appellant contends that it is not because Samuel Cummins and the Central Ohio Rail Road Company, who were parties to the original agreement, did not intend for the crossing obligation contained in the Cummins instrument to "run with the land." Appellant notes

that the Cummins instrument did not use words of inheritance and did not expressly provide that the right to use the crossing would be for the benefit of the Cummins, their heirs, and assigns.

**{¶16}** Thus, we must determine whether or not the easement to cross the railroad that was contained in the Cummins instrument runs with the land. An easement is a property interest in the land of another that allows the owner of the easement "a limited use of the land in which the interest exists." *Colburn v. Maynard*, 111 Ohio App.3d 246, 253, 675 N.E.2d 1333 (4th Dist. 1996). Easements may be appurtenant or in gross. *Warren v. Brenner*, 89 Ohio App. 188, 192, 101 N.E.2d 157 (9th Dist. 1950). An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches and a servient tenement upon which the obligation or burden rests. *Id.* Easements appurtenant "run with the land." An easement in gross, on the other hand, is a right held by an individual, exists independent of any ownership of land, and is not transferrable to subsequent owners. *DeShon v. Parker*, 49 Ohio App.2d 366, 367, 361 N.E.2d 457 (9th Dist. 1974). An easement may be created by any one of four methods: by grant, implication, prescription, or estoppel. *Kamenar RR. Salvage, Inc. v. Ohio Edison Co.* , 79 Ohio App.3d 685, 689, 607 N.E.2d 1108 (3rd Dist. 1992). An easement may be created or may arise expressly by grant, or by exception or reservation in a deed. See *National Exchange Bank v. Cunningham*, 46 Ohio St. 575, 22 N.E. 924 (1889).

**{¶17}** While Ohio law no longer requires the use of words of inheritance to create or convey interests in land, this Court must apply Ohio law as it existed in 1852, the time the instrument was created. See *Merrill Lynch Mortgage Lending, Inc. v. Wheeling & Lake Erie Ry. Co.,* 9th Dist. Summit No. 24943, 2010-Ohio-1827 at paragraph 13. As noted by

appellant, at such time, Ohio law made a distinction between a reservation and an exception. Id. The court in the *Merrill Lynch* case stated as follows at paragraphs 17-19:

A "reservation" created a new right that did not exist at the time the grantor owned the property, while an "exception" involved the grantor merely retaining part of what he already owned. See *Gill v. Fletcher* (1906), 74 Ohio St. 295, 303-304, 78 N.E. 433. If the language of the deed was deemed to constitute an "exception," words of inheritance were not necessary for the grantor to retain a property right that he could convey to future owners, for the grantor merely retained a portion of his former estate. *Id.; Hall v. Hall* (1910), 106 Me. 389, 76 A. 705, 706. On the other hand, because a "reservation" was considered to create a new property interest, which was essentially transferred back to the grantor from the property he conveyed, a reservation required words of inheritance to create an interest that would be alienable by the grantor. *Id.; Embleton v. McMechen* (1924), 110 Ohio St. 18, 25, 143 N.E. 177.

A grantor could retain an easement either by reserving it or by excepting it from the grant of land. Determining whether the grantor had excepted the easement or reserved it, however, was not necessarily resolved by resorting to the language of the deed or dictionary definitions of the terms "reservation" or "exception." As one court observed, "the distinction between an 'exception' and a 'reservation' is frequently quite obscure and uncertain, and has not always been observed." *Chappell v. New York, N.H. & H.R. Co.* (1892), 62 Conn. 195, 24 A. 997, 999. "Whether

a given clause creates a reservation or an exception is not so much a question of words as of intention to be gathered from all the circumstances of the case[.]" *Hall v. Hall,* supra.

In *Gill v. Fletcher,* 74 Ohio St. 295, 78 N.E. 433, at syllabus, the Ohio Supreme Court similarly emphasized that there is no magic deed language that will determine whether the interest retained by the grantor is an exception or a reservation. Instead, it is the intent of the parties that is dispositive. "Whether the language used in a deed creates a reservation or exception from the grant depends upon the intention of the parties as evinced by a construction of the whole instrument in the light of the circumstances of each case." *Id.* If the language and surrounding circumstances demonstrate that the grantor intended to retain more than "an immediate privilege which should expire with his own life" but instead intended to except "an absolute and inheritable" right, then the clause will be deemed to be an exception, which required no words of inheritance to preserve a perpetual interest. See *id.* at 304, 78 N.E. 433.

{¶18} The court, in the *Merrill Lynch* case, noted that the Ohio Supreme Court, in *Junction R.R. Co. v. Ruggles*, 7 Ohio St. 1, 1857 WL 1 (1857), recognized that technical deed language was not dispositive of the nature of an easement, and explicitly recognized the perpetual nature of the attachment of railroad tracks to property. The issue in *Ruggles* was whether or not, in the absence of word of inheritance, an easement for a railroad ran with the land. The Ohio Supreme Court noted that the railroad was annexed to real estate and that the railroad was "expected to be of perpetual duration." Id at. 8. As noted by the

court in *Merrill Lynch* at paragraph 21, "[d]espite the lack of any words of inheritance in the language creating the railroad's easement, the court made a presumption, absent any language to the contrary, that the parties creating the easement for the railroad to run its tracks across the landowner's property must have intended that the easement would be of a perpetual nature. *Id."*

**{¶19}** The court, in *Merrill Lynch* applied the above law in considering whether or not an 1890 deed that was recorded in 1893 *cr*eated an express easement appurtenant that ran with subsequent transfers of the land. The deed in such case, which was between the Longs and a railroad, provided as follows:

> Said Railroad Co. agrees to furnish and maintain one good grade crossing, properly planked. Said crossing to be located where the grantor may designate.

> Said Railroad Co. agrees to fence strip of land and without using barbed wire.

**{¶20}** After the railroad gave notice that it intended to close the crossing, the owner of the landlocked property, who was a successor in title to the Longs, argued that it had the legal right to continue using the crossing over the railroad's tracks. The railroad contended, in part, that any easement created by the deed was personal to the Longs and did not run with conveyances of the land and that the easement had been extinguished over the years due to the increased burden on the crossing. After the trial court granted summary judgment in the landowner's favor, the railroad appealed.

**{¶21}** The Court, in *Merrill Lynch* held that "[a]s it was clearly the intention of the parties that the easement created in the 1890 deed would be perpetual in nature, it was

unnecessary that its exception from the Longs' conveyance to the Railroad be supported by any words of inheritance." Id at paragraph 29. The court noted that "[w]ithout a crossing, the northern portion of the Longs' property would be inaccessible and would be rendered useless. Moreover, as observed by the Supreme Court in *Ruggles,* once the tracks were affixed to the property and the railroad line was in operation, it was essentially part of the real estate and the intention was that it would continue to operate indefinitely. The parties certainly intended that the Railroad would continue to exist, as would a need to cross it, beyond the lifetime of the Longs." Id at paragraph 29.

{¶22} Applying the above case law to the case sub judice, we find that the trial court did not err in finding that the right to a crossing runs perpetually with the land in this case. Nothing in the Cummins instrument stated that the crossing was limited in who could access it or in duration. There was evidence before the trial court that a railroad crossing exists on the property owned by David Green and has been in use for over 100 years. Moreover, without a crossing, the subject property is legally landlocked and incapable of being developed. The Public Utilities Commission of Ohio, which inspected the subject property on March 25, 2008, concluded in a report as follows:

> [t]he 40 acre parcel has no right of way or easement onto it. I found no easy way to gain access to the property without installing a new highway rail grade crossing off of US 22. The only way to gain access off of Rix Mills Road is to obtain an easement from the current property owners who operate a warehousing facility. Access off of Homestead Road would not be feasible due to the low clearance of the railroad bridge and the fact that

it would hinder emergency personal (sic) from gaining access due to an emergency."

**{¶23}** The report recommended that appellee obtain a public highway rail grade crossing by pursuing legal means. The Muskingum County Engineer, in an August 31, 2009 letter to appellee, stated that the Homestead Drive access was "extremely limited due to a railroad underpass that will not allow more than one car through at one time and has low clearance…..All other points of the property are landlocked." Moreover, Christopher Frank, appellant's representative, testified during his deposition that he had a role in deciding whether a crossing should be granted or denied and that he had recommended to appellant that it provide a crossing.

**{¶24}** Appellant, in its brief, maintains that there was admissible evidence demonstrating that a second crossing was constructed on the Cummins property and that, therefore, all crossing obligations under the Cummins instrument were met. Appellant specifically points to an October 9, 1930 Valuation Map as showing that there was a second crossing over that portion of the railroad track that crosses what is now the subject property. However, at his deposition, Christopher Frank testified that he did not know who created the maps and that he was unsure if one of the roads indicated on the map ever existed. In contrast, appellee presented 1941 and 1950 aerial photographs, right of way plans and a February 12, 2016 soil testing  report stating that there was no "existing evidence of a former grade crossing along the north boundary" of appellee's property. All show that there was no crossing on the subject property. Moreover, Frank, during his deposition, admitted that a 1987 Valuation Map does not show a crossing on

the subject property and, in fact, does not show a crossing on the Green property even though it is undisputed that such a crossing exists and has existed for decades. The Valuation Maps are, therefore, unreliable and lacking in evidentiary value.

**{¶25}** Appellant next argues that any right to a crossing over the subject property that may have existed under the Cummins instrument has been abandoned. Appellant emphasizes that the relevant crossing was not used for a period of more than 164 years. However, mere non-use of an easement, for a period however long, will not amount to abandonment. *Wyatt v. Ohio Dept. of Transportation*, 87 Ohio App.3d 1, 5, 621 N.E.2d 822 (11th Dist. 1993). "[T]here must be a relinquishment of possession with an intent to terminate the easement." Id. (Citations omitted).  Intent to abandon must be shown by "unequivocal and decisive acts" which are inconsistent with continued use and enjoyment. *Snyder v. Monroe Township Trustees, et al.*, 110 Ohio App.3d 443,458, 674 N.E.2d 741 (2nd Dist. 1996).

**{¶26}** Appellant asserts that appellee's predecessors used the subject property for agricultural purposes by accessing the property from Rix Mills Road and/or Homestead Drive and that this is evidence that the right to a crossing was abandoned. However, we concur with appellee that this is "hardly evidence of a clearly manifested intention to abandon the right to a crossing onto US 40/22."   Moreover, the need to access US 40/22 by means of such a crossing did not arise until appellee, who intended to develop the property for commercial and other purposes, purchased the same.  See *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska,* 11th Dist. Lake No. 2003–L–192, 2005–Ohio–3398, ¶ 58. We find that the right to a crossing was not abandoned.

**{¶27}** Appellant further maintains that any right to a crossing over the subject property that may have existed under the Cummins instrument has been lost by adverse possession. According to appellant, the railroad has adversely possessed the railroad crossing right by not permitting a crossing over its tracks for 164 years when it allegedly had an obligation to do so.

**{¶28}** Adverse possession focuses on the acts of the one claiming prescriptive ownership and requires proof of exclusive possession and open, notorious, continuous, and adverse use for a period of 21 years. *Grace v. Koch,* 81 Ohio St.3d 577, 692 N.E.2d 1009, syllabus (1998). To prevail on a claim for adverse possession, a claimant must establish these factors by clear and convincing evidence. *Grace v. Koch* at 580, 692 N.E.2d 1009. A party who fails to prove any of the elements fails to acquire title through adverse possession. *Grace v. Koch* at 579, 692 N.E.2d 1009. "If a claimant's use of the disputed property is either by permission or accommodation for the owner, then it is not 'adverse,' for purposes of establishing adverse possession." *Coleman v. Penndel Co.* (1997), 123 Ohio App.3d 125, 703 N.E.2d 821, paragraph three of the syllabus. In the case sub judice, appellant's use of the rail line over the subject property was permitted by and in accordance with express grant contained in the Cummins instrument and was not adverse. Adverse possession, therefore, is not applicable.

**{¶29}** Based on the foregoing, we find that the trial court did not err in granting appellee's Motion for Summary Judgment while denying that filed by appellant.

**{¶30}** Appellant's first and second assignments of error are, therefore, overruled.

III

{¶31} Appellant, in its third assignment of error, argues that the trial court, in its March 29, 2017 Judgment Entry, improperly ordered appellant to perform obligations beyond mere construction of a crossing and that the court's Judgment Entry improperly exceeded the rights granted by the Cummins instrument and/or the relief requested by appellee.

{¶32} The trial court, in its March 29, 2017 Judgment Entry, stated, in relevant part, as follows:

Defendant is obligated, and shall construct, at its own cost, an at grade railroad crossing in alignment with the curb cut granted to Plaintiff by the Ohio Department of Transportation ("ODOT"). The crossing shall be at least 36 feet in width, and otherwise built to standards applicable for high-density traffic, including semi-truck traffic, and as otherwise necessary to handle traffic projections as set forth in the Traffic Impact Study submitted in this case. This includes that Defendant shall, at its own cost, provide all crossing safety and warning devices and features for such crossing as appropriate in accordance with the topographical profile, speed and number of daily train traffic, and volume of vehicular traffic anticipated pursuant to the Traffic Impact Study submitted in this case, and to further include any traffic signal pre-emption at US 40/22 as appropriate and/or as required or recommended by ODOT or any other agency or authority with jurisdiction. The crossing construction shall begin no later than 30 days after start of construction of the access road to which the crossing will connect.

Defendant shall further permit, without interference or charge, any water, sewer, utilities or other improvements required to go under or above the crossing. If the roadway to which the crossing connects is designated as a public road, Defendant shall, at its own costs, provide and modify any safety and warning devices and equipment as may be required by any agency or authority having jurisdiction over such matters. Defendant shall maintain, at its own costs, the crossing (whether private or public), and safety and warning devices, and equipment.

**{¶33}** Appellant argues that the Cummins instrument did not address water, sewer, utilities or other improvements and traffic signals and that appellee did not request such relief in his complaint. Appellant also argues that there was no language in the Cummins instrument requiring it to "maintain" the crossing and requiring it to "modify" safety and warning equipment as circumstances change over time.

**{¶34}** However, as noted by the court in the *Merrill Lynch* case, "changes in the use of an easement are permitted to the extent that they result from the normal growth and development of the dominant land, and are, therefore, a proper and reasonable use of the easement." Id at paragraph 36, citing *Erie RR. Co. v. S.H. Kleinman Realty Co.*, 92 Ohio St. 96, 110 N.E. 527 (1915); *Mark Ten Mining & Consulting, Inc. v. Rawson* (Nov. 25, 1992), 7th Dist. No. 91-C-77, at 2.

**{¶35}** While appellant, in this matter, contends that there was no such evidence in this case, we find that there was evidence presented to the trial court that, over time, the area in which the subject property is located has changed for agricultural to commercial and industrial. David Radecke, appellee's Managing Member, in a

supplemental affidavit that was attached to its reply to appellant's memorandum in opposition to appellee's Motion for Summary Judgment, stated, in relevant part, as follows:

4. The curb cut and access grant from ODOT permitting three 12' lanes, (ingress, egress, and a turn lane) for the Subject Property is necessary for the development of the Subject Property and is consistent with growth and development trends which have occurred over the past 150 years, including in and around the Subject Property. The property contiguous and to the immediate east of the Subject Property is zoned Industrial in the Village of New Concord and contains a 700,000+ sq. ft. NFI Distribution Center, which has semi-trucks going in and out of the property on a regular basis. The Subject Property is also zoned Industrial in the Village of New Concord. The Traffic Impact Study of Harry Matter/Civil Design Associates, Inc., further sets forth the high volume of peak hour traffic that currently drives past the locations of the ODOT access grant/curb cut for the Subject Property, and for which the railroad crossing is sought, and such traffic volume demonstrates a single lane farm crossing is not adequate for development and growth trends over the past 150 years as currently exists. I further testified in deposition as to the projected and anticipated potential uses for the Subject Property, as cited to the Court in Plaintiff's filings and which therefore will not be set forth here again, but a single lane farm crossing would be inadequate for such development, and would be inconsistent and contrary to the growth and development trends

as indicated by the actual use and development on the adjoining property and the Subject Property's zoning, as well as the projected and anticipated potential uses for the Subject Property, including those identified in Resolutions and communications from the Village of New Concord, which are also in the record before the Court.

{¶36} The Village Administrator for the Village of New Concord, in a February 17, 2017 letter/affidavit, stated that appellee's property was zoned industrial and that the warehouse property directly to the east was also zoned industrial. There was evidence presented to the trial court in the form of a Traffic Impact Study that, during peak traffic times, over 500 vehicles per hour drove past the location of an ODOT access grant/curb cut for subject property. Moreover, the Village of New Concord, in a Resolution passed on February 14, 2011, indicated that a grade crossing was necessary to put the subject property into "productive use, with the intent of creating economic activity and bring jobs to the Village of New Concord and Muskingum County." We find, based on the foregoing, that the trial court did not err in finding that appellee was entitled to a crossing sufficient to satisfy modern growth and demand.

{¶37} With respect to bringing utilities to the subject property, the general rule is that the servient tenant may "use (his) land for any purpose that does not interfere with the easement." *Gibbons v. Ebding*, 70 Ohio St. 298, 71 N.E. 720, 721 (1904). Thus, appellee, as owner of the subject property, has the right to bring utilities over or under the railroad provided that doing so does not interfere with appellant's easement rights and use in the railroad. When, during his deposition, Christopher Frank was asked whether

there would be any operational impacts to the railroad if there was a high-volume or low-volume crossing, he indicated that there was not.

**{¶38}** Based on the foregoing, appellant's third assignment of error is overruled.

IV

**{¶39}** Appellant, in its fourth assignment of error, contends that the trial court erred by not granting its Motion to Strike.

**{¶40}** On December 14, 2016, appellee filed a Motion for Summary Judgment supported by the affidavit of Kyle Baldwin, a geologist and owner of Roxsol, LLC. On February 3, 2017, appellee filed a memorandum in opposition to appellant's Motion for Summary Judgment. On the same date, appellee filed the supplemental affidavit of Harry D. Matter, an employee and President of Civil Design Associates, Inc. Appellant, on February 3, 2017, filed a Motion to Strike such evidence on the basis that it was untimely. Appellant argued that appellee was untimely producing new opinions from both experts. With respect to Matter, appellant argued that, as part of discovery, appellee submitted a December 29, 2015 letter from Matter in which Matter opined that a crossing had existed on the subject property and that, after the close of discovery, appellee submitted an affidavit from Matter stating otherwise. With respect to Baldwin, appellant contended that his February 12, 2016 letter report disclosing the results of soil tests performed on the subject property were outside of the railroad right-of-way and that, after discovery was closed, appellee, on November 11, 2016, submitted a new letter report from Baldwin providing soil test results that were purportedly performed in the relevant area.

**{¶41}** While the trial court never expressly ruled on the Motion to Strike, we must presume that the motion was implicitly overruled." *Swinehart v. Swinehart,* 5th Dist. Ashland No. 06–COA–020, 2007–Ohio–6174, ¶ 26.

**{¶42}** A trial court's decision to grant or deny a motion to strike an affidavit is reviewed using an abuse of discretion standard. *Early v. The Toledo Blade,* 130 Ohio App.3d 302, 318, 720 N.E.2d 107 (6th Dist.1998). An abuse of discretion connotes that the lower court's attitude in reaching its judgment was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶43}** The discovery cut-off in the case sub judice was October 31, 2016. Appellee's counsel, in an affidavit attached to appellees' response to the Motion to Strike, stated that, on April 26, 2016, he had submitted by mail to appellant's counsel documents including a December 29, 2015 letter and attachments from Matter and his Traffic Impact Study and Baldwin's February 12, 2016 letter and soil test results. He further stated that, on May 4, 2016, he had emailed to appellant's counsel appellee's answers to appellant's interrogatories. Appellee, in the answers, stated that Kyle Baldwin, a geologist, and Harry Matter, an engineer, were both expert witnesses. Appellee's counsel, in his affidavit, also stated that, on November 11, 2016, he had received Baldwin's November 10, 2016 report and attachments and forwarded the same to appellant's counsel the same day.

**{¶44}** Thus, as noted by appellee, appellant was aware of the names of the above witnesses and the subject matter upon which they would testify before the discovery cut-off date. "[W]hen a complaining party knows the identity of the other party's expert, the subject of his expertise and the general nature of his testimony, a party cannot complain

that they are ambushed.' " (Citations omitted.) *Revilo Tyluka, LLC v. Simon Roofing & Sheet Metal Corp.,* 193 Ohio App.3d 535, 952 N.E.2d 1181, 2011–Ohio–1922, ¶ 48 (8th Dist.). Moreover, appellant did not request a scheduling order requiring the production of expert reports and opinions or depose either expert.

**{¶45}** Moreover, with respect to Baldwin, appellant, in its May 5, 2016 responses to appellee's interrogatories, did not disclose exactly where it maintained a crossing supposedly once existed on the subject property. It was not until after appellant's representative was deposed on September 19, 2016 and appellee received a copy of the deposition transcript on October 13, 2016 that appellee discovered that Baldwin had performed his testing using incorrect coordinates for the alleged crossing. Appellee then had Baldwin conduct new soil testing using the proper location and update his findings. As is stated above, Baldwin's November 10, 2016 report was forwarded to appellant's counsel the next day.

**{¶46}** Based on the foregoing, we find that the trial court did not abuse its discretion in denying the Motion to Strike. The trial court's decision was not arbitrary, unconscionable or unreasonable.

**{¶47}** Appellant's fourth assignment of error is, therefore, overruled.

**{¶48}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Earle Wise, J. concur.