[Cite as *Hemmelgarn v. Huelskamp & Sons, Inc.*, 2019-Ohio-5298.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SHELBY COUNTY

JAMES R. HEMMELGARN,

    **PLAINTIFF-APPELLANT,**                  **CASE NO. 17-19-07**

    v.

HUELSKAMP & SONS, INC.,                       **O P I N I O N**

    **DEFENDANT-APPELLEE.**

---

**Appeal from Shelby County Common Pleas Court**
**Trial Court No. 18CV000210**

**Judgment Affirmed**

**Date of Decision: December 23, 2019**

---

**APPEARANCES:**

    *Jeremy M. Tomb* **for Appellant**

    *Robert B. Fitzgerald and Stanley R. Evans* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant, James R. Hemmelgarn ("Hemmelgarn"), appeals the May 23, 2019 judgment of the Shelby County Common Pleas Court finding in favor of defendant-appellee, Huelskamp & Sons, Inc. ("HSI" and/or the "Huelskamps") regarding two easements on Hemmelgarn's property.

*Conveyance History of Tracts I and II*

{¶2} In 1981, Hemmelgarn purchased land consisting of his current property and Tract I and Tract II. In 1984, Hemmelgarn agreed to sell Tract I and Tract II to Curtiss "Dutch" Henschen, a local farmer. Tract II is comprised of 24.502 acres and does not have legal access to a pubic roadway. In other words, Tract II is surrounded by other parcels that abut public roads, but Tract II itself is "landlocked." Tract II is situated directly east of Hemmelgarn's property. As part of the agreement, Hemmelgarn also sold Tract 1 to Henschen. Tract I is comprised of 0.64 acres is situated directly north of Hemmelgarn's property. Tract I has access to Knoop-Johnston Road, a public roadway.

{¶3} Tract I and Tract II are not contiguous. As a result, the 1984 deed documenting the sale of Tract I and Tract II from Hemmelgarn (grantor) to Henschen (grantee) included the following language:

> **The grantor also grants to the grantee the drive easement as shown on the plat recorded in Plat Vol. 19, Page 72. Plat recorded Vol. 19, Page 72.**

> **ALSO a 30' easement along the north boundary line of Grantor connecting Tract I and Tract II above.**

(Pl. Ex. 5, Def. Ex. A) (emphasis in original).

{¶4} In 1992, Tracts I and II were sold in a Sheriff's sale to Bernard Steinke. The 1992 deed contained identical language describing the easements over the northeast corner of Hemmelgarn's property. (Pl. Ex. 6, Def. Ex. B). Tracts I and II were later conveyed via general warranty deed to Bernard Steinke's son, Richard S. Steinke, in 2010, and then again to Richard's son, Richard D. Steinke in 2015. Both the 2010 and 2015 deeds contained the same language describing the easements as the original 1984 deed. (Pl. Exs. 7-8, Def. Exs. C-D).

{¶5} In April of 2017, HSI purchased Tracts I and II from Richard D. Steinke. The 2017 deed contained the same easement language as the 1984, 1992, 2010, and 2015 deeds. HSI is a closely held Ohio corporation consisting of five brothers and their mother by the family name of Huelskamp. Farming and livestock production is the primary business of HSI. HSI and another entity owned by the same individuals, Huelskamp Brothers Farm ("HBF"), own other parcels of land in the area surrounding Tract I, Tract II, and Hemmelgarn's property. After this transfer, a dispute arose between the parties over HSI's use of the easements and this lawsuit was initiated by Hemmelgarn.

*Procedural History*

**{¶6}** On October 31, 2018, Hemmelgarn filed a complaint against HSI requesting injunctive and declaratory relief, and claiming civil trespass and termination of easement by adverse possession and abandonment. HSI filed an answer and counterclaims for quiet title relief regarding its rights to the easements—specifically, a declaration that the deed entitles it to use of the easements. Hemmelgarn filed an answer to HSI's counterclaims.

**{¶7}** On March 28 and 29, 2019, a trial to the court was held. Numerous witnesses testified for each party. Several exhibits were admitted, including all the deeds related to the conveyance of Tracts I and II, the plat map, and several aerial photographs of the area.

**{¶8}** On April 26 and May 23, 2019, the trial court issued decisions in favor of HSI. Specifically, the trial court found that the deeds conveyed two easements in two separate paragraphs, with the second easement located on a thirty-foot wide strip *along* Hemmelgarn's north property line connecting Tract I and Tract II. The trial court further found that Hemmelgarn failed to substantiate his trespass claims and failed to demonstrate that the express easements in the deed have been extinguished by adverse possession or abandonment. The trial court also found in favor of HSI on its counterclaims.

{¶9} Hemmelgarn filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT IMPROPERLY INTERPRETED THE TWO DRIVE EASEMENTS BY REVISING AND CHANGING THE DRIVE EASEMENTS TO EXPAND THEIR LOCATION AND SCOPE.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT MISCONSTRUED THE FACTS AND MISCONSTRUED THE LAW ON THE USE OF EASEMENTS AND TRESPASS TO HOLD HEMMELGARN FAILED TO PROVE A CLAIM OF CIVIL TRESPASS.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT MISCONSTRUED OHIO LAW ON ADVERSE POSSESSION AND, OR ABANDONMENT OF AN EASEMENT TO HOLD THESE CLAIMS WERE NOT ESTABLISHED.**

*First Assignment of Error*

{¶10} In his first assignment of error, Hemmelgarn argues that the trial court improperly interpreted the two drive easements conveyed in the deeds. Specifically, Hemmelgarn claims that the trial court in its decision expanded the scope and location of the easements originally conveyed in the 1984 deed.

*Express Easement*

{¶11} An easement is the grant of a use on the land of another. *Crane Hollow, Inc. v. Marathon Ashland Pipeline*, LLC, 138 Ohio App.3d 57, 66 (4th Dist.2000);

*Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231 (1968). "An easement in or over the land of another may be acquired only by grant, express or implied, or by prescription." *Gulas v. Tirone*, 184 Ohio App.3d 143, 2009-Ohio-5076, ¶ 23 (7th Dist.), citing *Trattar v. Rausch*, 154 Ohio St. 286, 291 (1950), at paragraph two of the syllabus. Once the determination is made that an easement is in existence, the focus must be shifted to ascertaining what type of easement has been created.

{¶12} When interpreting the terms of a written easement, the court must follow the ordinary rules of contract construction so as to carry out the intent of the parties as demonstrated by the language in the contract. *Lakewood Homes v. BP Oil, Inc.*, 3d Dist. No. Hancock 5-98-29, 1999-Ohio-851, citing *Skivoloski v. East Ohio Gas Company*, 38 Ohio St.2d 244, 313 (1974), syllabus, paragraph one. If the question is the scope of an easement, the court must look to the language of the easement to determine the extent. When the terms of an easement are clear and unambiguous, a court cannot create new terms by finding an intent not expressed in the language used. *See Alexander v. Buckeye Pipe Line Co*., 53 Ohio St.2d 241, 246 (1978).

{¶13} However, if there is no specific delineation of the easement, or if the document is ambiguous, then the court must look to the surrounding circumstances in order to determine the intent of the parties. *Murray v. Lyon*, 95 Ohio App.3d 215, 219 (9th Dist. 1994). The language of the easement, coupled with the surrounding

circumstances, is the best indication of the extent and limitations of the easement.

*Apel v. Katz*, 83 Ohio St.3d 11, 17, 1998-Ohio-420.

### *Easement Language*

{¶14} As previously discussed, the language contained in the 1984 and the subsequent deeds states the following:

> **The grantor also grants to the grantee the drive easement as shown on the plat recorded in Plat Vol. 19, Page 72. Plat recorded in Vol. 19, Page 72.**
>
> **ALSO a 30' easement along the north boundary line of Grantor connecting Tract I and Tract II above.**

(Pl. Ex. 5, Def. Ex. A) (emphasis in original).

{¶15} The parties do not dispute that the plat map referenced in the deed (Vol. 19 Page 72) depicts an L-shaped easement in the northeast corner of Hemmelgarn's property. Within this L-shaped demarcation, the plat map notates a "30' Drive Easement" and a "50' Drive Easement." (See Pl. Ex. 10). The crux of the parties' dispute is the interpretation of the second paragraph containing the language "ALSO a 30' easement along the north boundary line of Grantor connecting Tract I and Tract II above." (Pl. Ex. 5, Def. Ex. A) (emphasis in original).

### *Hemmelgarn's Position*

{¶16} It is Hemmelgarn's position that the easements conveyed in the deeds are limited to the L-shaped area shown on the plat map. Under his view, the first easement conveyed is *set off* thirty feet from his northern property line and is only

thirty feet in width. According to Hemmelgarn, this first easement creates the longer portion of the L-shape. The eastern portion of the first easement abuts the western boundary of Tract II, but does not connect to Tract I. Therefore, Hemmelgarn's interpretation of the easement language also leaves a thirty-foot wide strip of land that Hemmelgarn asserts is not subject to use by anyone other then him between Hemmelgarn's northern property line running parallel to and along the entire length of the first easement. The second easement conveyed in the deed, according to Hemmelgarn, is merely a thirty-foot by fifty-foot section of land that constitutes the shorter perpendicular portion of the L-shape easement on the plat map and connects the first easement to the shared property line between Hemmelgarn and Tract I.

*HSI's Position*

{¶17} For its part, HSI contends that the first easement conveyed by the deed is the *entire* L-shaped drive easement. According to HSI, the second easement in the deed references the additional thirty-foot wide strip of land running along Hemmelgarn's northern property line and parallel to the entire longer portion of the L-shape platted first drive easement. This second easement directly connects the southeast corner of Tract I to the northwest corner of Tract II. Under HSI's view, the entire area of the two easements combined forms a 60 foot by 410 foot rectangle along the northeast corner of Hemmelgarn's property.

{¶18} Notably, at trial, both parties presented expert testimony to support their respective positions on the scope, size, and location of the easements conveyed by easement language in the deeds.

*Trial Court's Decision*

{¶19} After hearing the evidence presented at trial, the trial court found in favor of HSI in its interpretation of the easement language. Specifically, the trial court made the following finding regarding the location and scope of the easements conveyed in the deeds in its decision.

> **The deed has two paragraphs addressing easements. The first paragraph conveys, "the drive easement as shown on the plat recorded in Plat Volume 19, Page 72…." The plat is a drawing of an area L shaped clearly marked as "drive easement." The plat labels one part of the drive easement at [*sic*] fifty (50) feet and another part of the drive easement as thirty (30) feet.**
>
> **The second paragraph conveys, "a thirty-foot easement along the north boundary line of grantor connecting Tract I and Tract II." Although the second paragraph does not specify the purpose of the easement, the evidence is clear that the intentions of the parties was to provide a means of access from Tract I to Tract II. It is significant to this court that the second paragraph starts with the word "ALSO." To this court that clearly indicates an additional easement beyond the drive easement depicted in Plat Volume 19, Page 72.**

(Doc. No. 88 at 1-2).

{¶20} In rendering its decision, the trial court found the first paragraph of the easement language clearly conveyed the "L-shaped" drive easement depicted in the plat map incorporated by reference in the deed. However, the trial court determined

that the conveyance in the second paragraph was more ambiguously stated. Therefore, the trial court properly considered the extensive evidence regarding the intended purpose and use of the easements to assist in determining the scope of the second easement conveyed in paragraph two. "Ohio appellate courts have held that when the trial court uses extrinsic evidence to determine the dimensions or scope of an easement, an issue of fact is presented. A reviewing court will not disturb the trial court's decision if it is supported by competent, credible evidence. As such, the proper standard of review is manifest weight of the evidence." *Cliffs & Creeks, L.L.C. v. Swallie*, 7th Dist. Belmont No. 17 BE 0039, 2018-Ohio-5410, ¶ 12 (internal citations omitted).

*Evidence Regarding the Purpose of the Easement*

{¶21} It is undisputed by the parties that the purpose of both easements is to provide Tract II with access to Knoop-Johnston Road through Tract I. At trial, Hemmelgarn recalled his discussions with Henschen regarding the original transaction.[1] According to Hemmelgarn, Henschen had expressed a desire to farm Tract II. Hemmelgarn agreed to also sell Tract I to Henschen because at the time Knoop-Johnston Road was the best way to access Tract II with farm equipment due to Jackson Road, the parallel running road to the east, having a covered bridge that was not conducive to the passage of heavy equipment. Hemmelgarn further

---

[1] The record indicates that Henschen died in 2006. Hemmelgarn estimated that Henschen paid him $1,125 per acre for the purchase of Tracts I and II.

explained that when he sold the land to Henschen he purposefully did not include the portion of his property connecting Tract I and Tract II because he wanted to maintain a wooded boundary and a square property line.

{¶22} Hemmelgarn maintained that the easements were meant to be temporary and limited to Henschen's use only because Henschen had intended to purchase additional property adjoining Tract II so that the parcel would no longer be "landlocked." Despite this assertion, Hemmelgarn acknowledged at trial that this limitation and exclusive use to Henschen was not specified in the language in the deed that he signed in 1984, and that he never attempted to have the deed amended while Henschen owned the property. Hemmelgarn also recalled being present at the Sheriff's sale in 1992. Hemmelgarn stated that he bid on the property but was outbid by Bernard Steinke. However, Hemmelgarn admitted that he did not raise any issues about the easements at the Sheriff's sale.

*Evidence Regarding the Use of the Easements*

{¶23} Throughout the trial Hemmelgarn maintained that the easements were not used after Henschen was no longer the owner of Tracts I and II. He testified that the area, where he believed the easements to be, was impassible to farming equipment because it was overgrown with trees and only wide enough for small recreational vehicles. Hemmelgarn stated that he placed large concrete drainage pipes, a compost pile, and other impediments at the east end of the easements near

the boundary with Tract II. Hemmelgarn claimed that after HSI purchased Tracts I and II in 2017, the Huelskamps began to trespass along the northern boundary of his property, outside of the area where he believed easements to be located.

{¶24} Hemmelgarn also presented the testimony of his daughter, Sara Graves, who testified that prior to 2017 the Hemmelgarn family were the only people who used and maintained the easements and Tract I. Sara's testimony was consistent with her father's that the only people they saw in the easement area were the occasional poacher who was immediately asked to leave by Hemmelgarn. However, Sara acknowledged that she moved away from the property in 2003 when the Hemmelgarn family moved closer to Sidney. After that point, the property was primarily used for Hemmelgarn's business. Luke Vondenhueval, an employee of Hemmelgarn's since 2013, stated that he also never observed anyone using the easement area prior to 2017. He recalled that Hemmelgarn regularly maintained Tract I and prevented people from accessing the easement area.

{¶25} This testimony was contradicted by the testimony of Jeromy Griewe. Jeromy Griewe testified that he rented Tract II from Henschen in the early 1990's and then again when the Steinkes became the owners. He stated that Tract II has approximately 16.5 tillable acres. Griewe recalled using the easements for decades on a seasonal basis transporting farm equipment to plant and harvest crops. In

between planting and harvesting, Griewe also used the easements once a week to inspect the growth of his crops on Tract II.

{¶26} Griewe explained that the easements, which he also referred to as "the lane," simply "went with renting the property." (Tr. at 322). He described the area of the easements as situated on 30-foot wide strip *along* Hemmelgarn's northern property line. Griewe further claimed that he was "instructed" to maintain the easements as part of the rent. (Id.). As a result, he mowed the easements two to three times a year. Griewe claimed to be the only person who mowed the "lane" and recalled an incident in 2003 when he was confronted by Hemmelgarn who asked him to stop mowing the easements. However, Griewe stated that he continued to mow the easements as soon as Hemmelgarn left the vicinity. Griewe stated that he then continued to mow the easements for several years.

{¶27} In addition to Griewe, the Huelskamps provided testimony regarding their familiarity and use of the easement area since the mid-1980s. Mike Huelskamp recalled that his father farmed Tract II in the 1970's. Mike remembered in the mid-1980s observing Henschen clear the land in the thirty-foot wide strip *along* the northern boundary of Hemmelgarn's property line connecting Tracts I and II. John Huelskamp, Mike's brother, testified to first using the easements in 1985 or 1986, and continuing to use the easements until this litigation began. John explained that his family farmed land adjacent to Tract II and transported farm equipment through

the easements and Tract I during seasonal planting and harvesting. John stated that Henschen had given his family permission to use Tract I and the easements because of the Knoop-Johnston Road access. He reiterated the difficulty at the time transporting farm equipment in the area because of the covered bridge on Jackson Road and a dangerous curve on State Route 29. John's testimony regarding the Huelskamp's use of the easements was corroborated by the testimony of his son, Scott, who owned a farm on Knoop-Johnston Road across from Tract I. Scott testified that he had been using the easements and Tract I to access his family's land since the 1990's, mainly seasonally for planting and harvesting. Scott testified that in that time no one had ever told him that the easements could not be used by his family.

{¶28} The parties also presented testimony regarding an incident in 2009 when the Huelskamps removed a fence line and a row of trees along the easement area. Scott and John Huelskamp claimed that the trees provided too much shade over their crops on the adjacent parcel. Both Scott and John recalled asking Griewe for permission before they removed the fence and trees with bulldozers. Scott testified that he thought Griewe was the landowner at the time. At trial, Griewe remembered the Huelskamps asking for his permission and claimed he told them to talk to the Steinkes. Scott recalled that no one prevented him or his father from removing the trees. However, when Hemmelgarn discovered the removal of the

trees he called the Sheriff regarding the incident but no further legal action was taken. Scott recalled having a conversation with Hemmelgarn "a couple of weeks" after the incident, but that Hemmelgarn had not discussed the easement with him since then. (Tr. at 436).

*HSI's Purchase of Tract II*

{¶29} Mike Huelskamp provided testimony regarding HSI's purchase of Tracts I and II for $160,000 in April of 2017. He stated that Tracts I and II, and the accompanying easements, were offered as a "packaged deal," and that if HSI was only offered Tract II, it would have paid considerably less for the parcel. (Tr. at 515). He explained the value of having access to Tract II from Knoop-Johnston Road to HSI—specifically that it provided legal access to a public road without having to drive their equipment on tillable farmland, compacting the soil and reducing their crop yields.

{¶30} Both John and Scott Huelskamp testified to the additional value that Tract I and the easements provided Tract II because of their livestock program. John explained that one of the reasons HSI decided to purchase the land was because Tract I is situated across from Scott's farm where the livestock program is located. Tract I and the easements gave HSI convenient access to Tract II, which provided HSI with a place to haul excess livestock manure. John further described the use of Tract II, "[a]nd also we grow crops and stuff on it. Like, if we put wheat on it and

stuff, we can haul straw back over to Scott's house and so forth. So it just works into the livestock program." (Tr. at 468).

*Discussion*

{¶31} Based on the foregoing testimony we conclude that the record supports the trial court's determination that the language of the deed granting "ALSO a 30' easement along the north boundary line of Grantor connecting Tract I and Tract II above" conveyed a thirty-foot easement running *along* the north boundary of the Hemmelgarn's property connecting Tract I and Tract II. The evidence at trial, which in addition to testimony included several aerial photos depicting the cleared drive path and terrain of the easement area over the course of several years, establishes that this portion of the easement was in continual, and apparently uninterrupted, use since its creation in the mid-1980s for the purpose of transporting farming equipment from Knoop-Johnston Road.

{¶32} Aside from the evidence of the customary use of the easement over multiple decades, we are also persuaded by the fact that the location of the second easement, as determined by the trial court, more closely aligns with the language describing the second easement in the deed. For instance, under Hemmelgarn's interpretation of the easement only a small portion of the platted L-shaped drive easement runs along his northern boundary. Moreover, Hemmelgarn's argued location of the second easement does not directly connect Tract I with Tract II.

Instead, it connects Tract I with the first easement which is contiguous to Tract II. On the other hand, under the trial court's interpretation, the second easement not only runs the entire length *along* Hemmelgarn's northern boundary, but it also directly *connects* Tract I and Tract II without the use of another easement over Hemmelgarn's land.

{¶33} This notwithstanding, testimony presented by multiple witnesses, including those testifying on Hemmelgarn's behalf, established that part of the platted L-shaped "drive easement" contained a ten to twenty foot "drop-off on a cliff," making that part of the easement not traversable with an ATV, let alone large farm equipment. (Tr. at 75) The presence of this steep, uneven terrain reasonably justified the conveyance of an *additional* easement, other than what was designated specifically as a "drive easement," along the northern boundary of Hemmelgarn's property where the terrain was more stable to transport farm equipment and still provided access from Knoop-Johnston Road.

{¶34} Based on the evidence presented at trial which demonstrates the purpose of the easement, the continued use of the thirty-foot strip along Hemmelgarn's northern boundary as a cleared drive path to achieve that purpose, the consistency of the trial court's interpretation of the location of the second easement with the language contained in the deed, and the evidence regarding the terrain in this area, we find that the trial court's interpretation regarding the scope

of the second easement is supported by manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

{¶35} In his second assignment of error, Hemmelgarn argues that the trial court erred in finding that he failed to prove his claim for trespass against HSI. " 'A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *.' " (Citation omitted.) *Apel v. Katz*, 83 Ohio St.3d 11, 19 (1998).

{¶36} The trial court observed in its decision that:

> **Much of Hemmelgarn's trespass complaint centers on the use of the 30 foot strip running along the north boundary of the Hemmelgarn property. Clearly, from the testimony and from the photographs that strip was used for access to Tract II. All of the evidence presented was that the easements were used to provide access to Tract II. Hemmelgarn largely relies on his contention that there was no easement along the north boundary line to support his claim for trespass. This court has found otherwise.**

(Doc. No. 88 at 5). As stated in our resolution of the first assignment of error, we concur with the trial court's finding that the easements conveyed in the deed included the 30 feet by 360 feet strip *along* Hemmelgarn's northern property line connecting Tract I and Tract II. The evidence established that this is the area of the easement that was most frequently used by the Huelskamps. Accordingly, we find

no merit to Hemmelgarn's claim for trespass insofar as he relies on a finding that no easement existed in that area.[2]

{¶37} Aside from these contentions, Hemmelgarn also asserts a claim for trespass based upon the Huelskamps' use of the easements between 1985-2017 to access their own property adjoining Tracts I and II with the permission of Henschen, the Steinkes, and Griewe, all of whom owned and/or leased Tracts I and II during that time. Hemmelgarn further claims that HSI continued to commit trespass *after* it purchased Tracts I and II, because it used the easements to access other farmland adjoining Tracts I and II.

{¶38} In its decision the trial court reached the following conclusion with respect to Hemmelgarn's trespass claim based upon the Huelskamps' use of the easement prior to HSI becoming the easement holder:

> **Hemmelgarn also argues that the use of the easement is limited to the grantee. The cases cited by Hemmelgarn address assignments of title to another party. That is not the case here. This court disagrees that the use of the easement is limited to only the titled owners. If that were true, then arguably anyone using the easement to access Tract II unless it was Henschen, or Steinkes, or ultimately Huelskamp, would be in violation of the easement conveyance. If that were true, tenant farmers, including Griewe, could not use the easement to access Tract II. Certainly, an owner of an easement has the right to allow others for his benefit to use the easement.** *See Fruth Fanns v. Village of Holgate*, **442 F. Supp 2d 4 70, 4 77 (N .D. Ohio 2006), "The owner of the dominate [*sic*]tenement is not the only person who can use an access easement to his or her property ... An easement-holder has the**

---

[2] Moreover, we also concur with the trial court's conclusion that the statute of limitations has passed for a trespass claim with regard to the 2009 removal of the fence line and trees in the easement area.

> **right to receive guests and invitees… Thus, others may use the easement to access (the property), but their use of the easement must be reasonable and comply with basic principles governing the use of easements."**

(Doc. No. 88 at 6).

**{¶39}** Consistent with the trial court's rationale, other courts have held that an easement holder may grant use of the easement to guests and invitees as long as their access and use remains reasonable and does not unduly burden the land upon which the easement is located. *See Pinkerton v. Salyers*, 4th Dist. Ross No. 13CA3388, 2015-Ohio-377, ¶ 37, citing *Barker v. Contini*, 5th Dist. Tuscarawas No. 93-AP-070050, *2 (Mar. 8, 1994); *See also Fruh Farms, Ltd. v. Holgate*, 442 F.Supp.2d 470, 477 (N.D.Ohio 2006). We also find it persuasive that the easement language contained in the deed does not grant exclusive or limited use of the easement to the easement holders.

**{¶40}** Moreover, the evidence at trial demonstrated that the Huelskamps' use of the easement during this time period was consistent with the overall purpose of the easement, which is to provide access for farm equipment from Knoop-Johnston Road. Given that HSI (and by proxy the Huelskamps) is now the easement holder and owner of Tracts I and II, we find that the record supports the trial court's conclusion that Hemmelgarn failed to establish that HSI committed civil trespass in this respect.

{¶41} Hemmelgarn next argues that HSI has committed continuing trespass since it became the easement holder by using the easements to access additional property other than Tracts I and II.  Initially, we note that "a cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which he or she is purportedly trespassing." *Bayes v. Toledo Edison* Co., 6th Dist. Lucas Nos. L-03-1177, L-03-1194, 2004-Ohio-5752, ¶ 68.  This notwithstanding, it appears that Hemmelgarn in substance is contending that HSI's use of the easement to access more than the 24.502 acres on Tract II constitutes a misuse of the easement by unreasonably expanding the use of the easement beyond its intended purpose.  The trial court resolved this issue in the following manner:

> **Hemmelgarn also argues that the easement was to be used only to access Tract II and that persons used the easement to access what is now the Huelskamp property to the north of Hemmelgarn's in violation of the easement. There is some merit to that claim. The testimony and photographs show a track entering onto the easement that this court determines to provide access to Tract II and then an almost immediate turn north onto property now owned by Huelskamp.**
>
> **However, it has been held that reasonable extensions of the use of an easement can be permitted where it does not create an undue burden on the servient estate. *Profitt v. Plymesser*, 12th Dist., 2001 WL 708884; *Diemling v. Kimble*, 5th Dist. No. 11AP12047, 2012 Ohio 3323, ¶ 10.  Since the easement as determined by the court runs along the boundary line between Huelskamp and Hemmelgarn, the court finds it is not unreasonable that Huelskamp would turn directly on to the Huelskamp property instead of driving the length of the easement on to Tract II and then to the remainder of the Huelskamp properties.**

(Doc. No. 88 at 5).

**{¶42}** Hemmelgarn's claim of HSI's misuse of the easement is based solely on the Huelskamps' testimony at trial indicating that they occasionally used the easements to access property adjoining Tract II. However, there is nothing in the record to suggest that this practice by the Huelskamps unreasonably burdened the easements or otherwise constituted misuse. Moreover, the testimony regarding the Huelskamps' use after they became the easement holders indicates that their use was primarily to provide access to Tract II from Scott Huelskamp's farm.

**{¶43}** Nevertheless, the evidence put forth by Hemmelgarn at trial attempted to establish that prior to HSI purchasing the land in 2017 the easement area was unused. The record demonstrates that Hemmelgarn filed the complaint initiating this lawsuit not long after HSI became the owner of Tracts I and II. John Huelskamp testified that after the litigation began he and Scott avoided using the easements because they did not "want to irritate the situation." (Tr. at 472). Simply put, the record does not provide evidentiary support to substantiate Hemmelgarn's claim on appeal that the Huelskamps unreasonably overburdened the easements and therefore committed an act of trespass.

**{¶44}** For all these reasons, we conclude that the trial court's decision finding Hemmelgarn failed to prove his trespass claims is supported by the record and we overrule the second assignment of error.

*Third Assignment of Error*

**{¶45}** In his third assignment of error, Hemmelgarn argues that he is the owner of Tract I and the easements by adverse possession, thereby terminating the drive easements across his property. In the alternative, Hemmelgarn argues that the easements have been terminated by abandonment for a lack of use by HSI's predecessors in interest—i.e., Henschen and the Steinkes.

*Adverse Possession*

**{¶46}** "It is well established in Ohio that to succeed in acquiring title by adverse possession, the claimant must show exclusive possession that is open, notorious, continuous, and adverse for 21 years." *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, ¶ 7, citing *Grace v. Koch*, 81 Ohio St.3d 577, 579 (1998). The party seeking title by adverse possession bears the burden of proving its elements by clear and convincing evidence. *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010–Ohio–5293, ¶¶ 22-23, citing *Grace* at syllabus. We review an appeal of a ruling on an adverse possession claim under a manifest weight of the evidence standard of review. *Nolen v. Rase*, 4th Dist. Scioto No. 13CA3536, 2013-Ohio-5680, ¶ 9.

**{¶47}** On appeal, Hemmelgarn maintains the trial court erred in finding that he failed to prove that he exercised dominion and control of Tract I and the easements to the exclusion of others for an uninterrupted 21 year period. In support

of his position, Hemmelgarn highlights testimony from his witnesses at trial that he was the only person who maintained Tract I and the easements prior to HSI's ownership in 2017. However, this testimony was contradicted by the testimony of Jeromy Griewe and the Huelskamps who all testified to their continued use of Tract I and the easements since Henschen acquired the land in 1984. Moreover, the evidence at trial established that any attempts by Hemmelgarn to establish ownership of the easement area went unnoticed by Griewe, the longtime tenant farmer of Tract II, who also claimed to be the only person to mow the easements, and by the Huelskamps who testified they were unaware that Hemmelgarn was the owner of the servient estate subject to the easements when they sought permission to remove the fence line and the trees in 2009.

{¶48} Accordingly, we conclude that the record supports the trial court's finding that Hemmelgarn failed to prove by clear and convincing evidence that he exercised dominion and control of Tract I and the easements to the exclusion of others for an uninterrupted 21 year period. Therefore, we conclude that the trial court's finding with regard to Hemmelgarn's adverse possession claim is supported by the manifest weight of the evidence.

*Abandonment*

{¶49} Alternatively, Hemmelgarn argues that Tract I and the easements were abandoned by HSI's predecessors in interest due to a lack of use. At the outset we

note that the mere non-use of an easement, for a period however long, will not amount to abandonment. *Wyatt v. Ohio Dept. of Transportation*, 87 Ohio App.3d 1, 5 (11th Dist. 1993). Rather, the intent to abandon must be present and shown by "unequivocal and decisive acts" which are inconsistent with continued use and enjoyment. *Bosky Group, LLC v. Cols. Ohio River R.R. Co.*, 5th Dist. Muskingum No. CT2017-0027, 2017-Ohio-8292, ¶ 25.

{¶50} As with his adverse possession claim, Hemmelgarn advances substantially similar arguments in support of his claim that title to Tract I and the right to use the easements had been abandoned by Henschen and the Steinkes and therefore cannot be possessed by HSI. However, Hemmelgarn's arguments regarding abandonment fail for the same reasons. As noted by the trial court, "[n]o evidence has been presented to demonstrate that Henschen or the subsequent titled owners expressed an unequivocal act to demonstrate an intention to abandon the use of the easement." (Doc. No. 88 at 7).

{¶51} Jeromy Griewe testified that he rented the farmland on Tract II from Henschen and the Steinkes beginning in the early 1990's. Griewe testified that use of Tract I and the easements "went with the rent" of Tract II. Griewe also testified to his weekly use of Tract I and the easements for several decades to look after his crops planted on Tract II. Accordingly, we conclude the trial court's finding with

regard to abandonment is supported by the record and we overrule the third assignment of error.

{¶52} For all these reasons the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**