WARREN, APPELLANT, *v.* BRENNER ET AL., APPELLEES.

(No. 1220—Decided December 13, 1950.)

*Mr. Dan K. Cook,* for appellant.

*Mr. Charles H. Lampen* and *Messrs. Keep & Scholz,* for appellees Morris Brenner and Sophia Brenner.

*Mr. Harry W. Wagner,* for appellee Alice J. Robinson.

DOYLE, J.  The facts relevant to this inquiry into the right of Morris Brenner, the owner in fee of a business block in the village of Wellington, Ohio, to use a stairway in an adjacent business block, owned in fee by one Silvia L. Warren, in connection with the use of the second story of his (Brenner's) building, are substantially as follows:

In the year 1901, W. W. Harvey was the owner in fee of the Warren building; E. F. Robinson was a prospective purchaser of an undivided interest in the Brenner property.  On the 18th day of June, 1901, they entered into the following written agreement (approximately a month prior to the date upon which Robinson acquired an undivided half interest in the fee):

"Lease Agreement

"This is to certify that on the 18th day of June, A. D. 1901, I, W. W. Harvey of Cleveland, Ohio, have for the consideration of one hundred and seventy dollars received to my full satisfaction of E. F. Robinson of Wellington, Ohio, have given to said Robinson the right and privilege to use the stairway leading up from the sidewalk to the second story of my brick building situated on the south side of West Main Street in the Village of Wellington, Lorain County, Ohio, and that I have also given said Robinson the right and privilege to make an opening at the top of the said stairway, said opening to be filled with a wood door, and the wood door to be covered by an iron door, said doors to be closed each and every night. Further, that in case said building and stairway be destroyed by fire or otherwise and said building be rebuilt then in that event this lease and agreement shall be in force during the lifetime of said stairway and building.

"The said E. F. Robinson agrees to put the said stairway in order, and be to one-half of the expense in the future of keeping the stairway in good order and condition at all times.

"It is understood that this lease shall hold good during the life of said brick building and stairway.

"In witness whereof we hereunto set our hands and seals at Wellington, Ohio, the day and year first above written.

"(Signed) W. W. Harvey
"(Signed) E. F. Robinson

"Signed, sealed and delivered in the presence of:
"(Signed) Fred Abbott
"(Signed) R. N. Goodwin"

(Duly acknowledged by W. W. Harvey and E. F. Robinson.)

The instrument was, as above shown, executed with the statutory formalities of a deed.

Approximately a month after the date of the instrument (June 18, 1901), the Brenner property was conveyed to E. F. Robinson and his wife as tenants in common. It also appears that the agreement was acknowledged on October 5, 1906, and later recorded on October 23, 1906, in the records of Lorain county.

Subsequently, W. W. Harvey disposed of the fee simple title to his property, and it is now owned by Silvia L. Warren, the appellant herein. The adjacent property was owned in fee from 1901 by E. F. Robinson and his wife as tenants in common until the said E. F. Robinson's death in 1944, at which time the entire fee became vested in his wife. The said wife then conveyed to Morris Brenner, one of the defendants below and one of the appellees herein.

The stairway had been used under the agreement to accommodate the Robinsons and their tenants in the use of their second story for more than forty years; it is now being used by the grantee, Brenner, for the same purpose. Silvia Warren now seeks a judicial declaration that her stairway can no longer be used as a matter of legal right by Brenner or his tenants as a means of access to the second floor of his building. And this she seeks by way of a declaratory judgment, in this appeal on questions of law and fact from the Court of Common Pleas of Lorain County.

The legal snarl presented by the pleadings and the evidence challenges the professional interest of a court, and we approach it with an appreciation of the difficulties which often exist in respect to the application of many of the rules which determine the quantum of estates to a given set of facts.

1. Estates may be said to fall primarily into "freehold estates" and "estates less than freehold." Freehold estates are divided into (a) estates of inherit-

ance, which pass to the owners' heirs, and (b) estates not of inheritance. Estates less than freehold include, *inter alia*, estates for fixed periods, the terminations of which are capable of ascertainment from the beginning (not life estates, however; such estates are freehold estates not of inheritance).

In this state prior to the year 1925, the use of the word "heirs" was necessary to create a fee simple by conveyance *inter vivos*. The word "heirs" was recognized as a word of limitation and not of purchase.

2. All easements appurtenant are estates in real property; therefore, freehold estates and estates less than freehold may exist in easements.

The essential qualities of easements, as stated by many distinguished members of the profession, are these: First, they are incorporeal; second, they are imposed upon corporeal property; third, they confer no right to a participation in the profits arising from such property; fourth, they are imposed for the benefit of corporeal property; fifth, there must be two distinct tenements—the dominant, to which the right belongs, and the servient, upon which the obligation rests.

An easement, although it is imposed on corporeal property, carries no corporeal interest in or right to the land. It is an invisible and intangible right and interest, which may be created by grant or agreement, conferring upon the grantee some lawful use out of or from the estate of another.

3. In partial summary and somewhat repetitious, it may be said that an easement appurtenenat always implies an interest in the land, or buildings affixed thereto, and constitutes a part of the real property, over or in which it is to be enjoyed. The interest of an easement may be freehold or chattel, according to its duration. The word "freehold" is used to mean any estate of inheritance or for life, and may be cor-

poreal or incorporeal, existing in or arising from real property. The word "chattel" is used to mean an estate less than a freehold; for instance, an estate for years, although it may last for a greater period than the life of the grantee.

This brings us to the circumstances of the case before us.

We first observe that words of inheritance are not employed in the instrument. Second, the estate granted was to be conditional or qualified—*i. e.*, conditional at all times upon the life of the building and stairway as it was, or, if destroyed by fire or otherwise, during their "life" after being rebuilt.

Estates of "special limitation" are well known to the student. Such estates may continue for the natural duration of estates in fee simple, for life or for years, or they may terminate before the end of such periods, owing to the happening of a contingency named; and such conditions may be annexed to every species of estate or interest in real property, including easements appurtenant.

While such estates resemble somewhat estates on condition subsequent, there is a fundamental difference. In an estate on condition subsequent, the words which provide for the termination of the estate on a contingency are not regarded as a part of the original limitation of the estate, but are considered to provide for the cutting off of the estate before its proper termination; while in an estate on special limitation, the words of contingency are regarded as a part of the limitation itself—they do not cut off an estate previously granted but merely name an alternative limit to the duration of the estate.

A critical analysis of the written agreement before us compels the conclusion, we think, that an estate of special limitation was created. Without words of in-

heritance, it could not, at the time of its origin, create a freehold estate of inheritance. In the absence of such words of limitation, there was created at the most a life estate in the grantee, Robinson, which was alternatively limited to the occurrence of an uncertain event which might have happened during the lifetime of the grantee, and thus "specially" terminated his estate, with the right of possession immediately reverting to the grantor as a matter of law.

In the preceding paragraphs we speak only of an easement appurtenant. Such an easement, we conclude, existed under the within agreement. The language of the instrument and the attendant facts indicate that it was created for the benefit of the grantee's estate and was not intended to be a mere personal right to the grantee. Under many circumstances, whether an easement is in gross or appurtenant to some other estate, may be determined by the relation of the easement to such estate, or by the absence of any such relation. It is a rule of general application that an easement is seldom considered to be in gross when it can be fairly construed to be appurtenant to some estate.

Thus far, we have assumed that an easement appurtenant may be created by contract and grant, when the grantee is the owner in fee or becomes the owner in fee of an undivided half interest in the dominant estate. It is established that a tenant in common cannot *grant* an easement which will be binding, even as to his own interest, as against a subsequent grantee of all the tenants in common. We have assumed, for the purposes of this case, that the reverse is not so; that it is possible for an easement appurtenant to be created by the owner in fee of the entire servient estate for the benefit of a dominant estate by way of contract

and grant, when the grantee is or becomes only a tenant in common in the fee of the dominant estate.

If our assumptions in the foregoing paragraph are not basically sound (we think they are), then we must conclude that there was created, by the instrument, only an easement in gross, or a license. If it be classified as an easement in gross, it constituted merely a *personal* interest in the land of the grantor; it became so attached to the person of the grantee that it could not exist except as so attached. And of course, it would terminate upon the death of the grantee.

If we classify the right given as a license, it likewise would have terminated with the death of the grantee. We are of the opinion, however, that under no circumstances may the right granted be classified as a license, because the use granted was more than a mere permission or personal privilege to use the stairway. A license passes no property or interest in real estate, while, as stated above, an easement implies an interest in real property. It is of the essence of a license that it is revocable at the will of the possessor of the land. Certainly, this legal relation was not bargained for by the parties under their written agreement. But if it be classified as a license, it terminated upon the death of the licensee.

We have further examined the instrument in the light of the relationship of landlord and tenant. While the distinction between a lease, a license, and an easement is generally plain, it is sometimes hard to classify.

Estates less than freehold are sometimes called leasehold estates, and the instrument of creation is generally called a lease. Such estates may be for a fixed period of time, the termination of which is either on a certain date or at a time *which is capable of ascertainment from the beginning.* They are classified as

personal property. A purported lease, however, which attempts to create an estate less than a freehold by providing a tenancy to endure until a particular event occurs, the time of which occurrence cannot be ascertained beforehand, does not create an estate for years. If it did, a lease for life could create an estate for years, since as soon as the life ceases, the duration of the tenancy is known.

Under these requirements, it is plain that there was not created a leasehold interest in the property. As heretofore shown, it was not a lease for years. Nor was it for life nor one of perpetual duration.

It is the conclusion, therefore, of this court that the instrument under consideration created at the most a life estate of special limitation in an easement appurtenant, and that it terminated in 1944, when E. F. Robinson died. This being our judgment, it follows that Brenner no longer has a legal right to the use of the Warren stairway.

A decree will be drawn for the appellant.

*Decree for appellant.*

STEVENS, P. J., and HUNSICKER, J., concur.