JOURNAL ENTRY AND OPINION
{¶ 1} This appeal stems from a dispute over the existence of an easement (the "access road") and who should maintain it. Defendants-appellants, Ferrous Realty Limited (and its organized entities, collectively referred to as "Ferrous") contend they have an express easement over plaintiffs-appellee's, Gateway Park, LLC ("Gateway"), property. The trial court, however, agreed with Gateway that Ferrous does not have an express easement and granted summary judgment to Gateway on this issue. The trial court then granted summary judgment to Gateway on Ferrous's claim that Gateway breached its covenant to maintain the easement since it found that there was no easement. Finding merit to the appeal, we reverse and remand.
 {¶ 2} The parcels of land currently owned by the parties, as well as a smaller parcel of land owned by Cuyahoga County, were at one time a single, large tract of land. The property consisted of 39.73 acres in the City of Brooklyn and was owned by The Cleveland, Cincinnati, Chicago, and St. Louis Railway Company ("railroad"). Ferrous currently owns 19.97 acres of the rear portion of the original property, and Gateway and the County own 14.41 and 4.34 acres respectively, of the front portion of the property.
 {¶ 3} The Gateway and County parcels abut Memphis Avenue, and are separated by a 60-foot access road that is at issue in this case. The Ferrous property sits "behind" (southwest of) the Gateway property. The access road *Page 4 
runs from Memphis Avenue to the Ferrous property, and all three land owners use the road to access Memphis Avenue.
 {¶ 4} On December 29, 1959, the railroad deeded the entire tract of land to Builders Structural Steel ("Builders"). It is undisputed that the Builders' deed contained a grant to Builders and its successors of an "easement for pedestrian and vehicular purposes" (the "Northwest/Abrams Easement"). This easement, which still exists, runs along the northwest side of the property (opposite the side with the access road), from Memphis Avenue to the back of what is now the Ferrous property.
 {¶ 5} On February 11, 1969, Builders (who changed its name to Allied Metals Company) leased 19.97 acres of the rear portion of the property (now owned by Ferrous), to Michigan Metals Processing Corporation ("Michigan Metals"). The original lease could not be found; however, a Short Form Lease executed "only for the purpose of being recorded to give notice of the existence of the lease," is in the record. The Short Form Lease indicates that the lease was for a period of ten years, beginning on February 11, 1969. The Short Form Lease expressly granted Michigan Metals an easement for ingress and egress over the Gateway property. It provided:
 {¶ 6} "Lessor [Builders/Allied] shall have the right at any time, and from time to time, to replace the existing roadway by building a new road which runs from Memphis Avenue to the leased premises. The new road shall have a 24 foot *Page 5 
wide hard surface adequate to meet the Ohio Department of Highway Specifications for secondary County Roads. Lessee [Michigan Metals] shall have an easement for ingress and egress over any such road in place of, and in substitution for, the easement granted herein to Lesseeover the existing road. Any such new road shall form a part of a 60 foot easement to be created by Lessor for road purposes for the benefit of Lessee and others whom may be authorized to use said new road. [Emphasis added.]
 {¶ 7} "The existing roadway shall be maintained by Lessee at its own expense so long as it is the sole user thereof. If Lessor or others claiming under Lessor use the existing roadway, Lessor thereafter shall pay or cause to be paid to Lessee, in reimbursement, one-half of the cost of such maintenance. * * *"[1]
 {¶ 8} Critical to this appeal is the next recorded deed in the original property's chain of title, recorded on May 10, 1971. In the 1971 deed, Builders/Allied conveyed 18.75 acres of the front portion of the property (what is now owned by Gateway and the County) to Federated Department Stores, Inc. The 1971 deed stated that the property was free and clear from all "[e]ncumbrances whatsoever except: * * * (d) those referred to in the Lease and the `short form' of Lease dated February 11, 1969, the `short form' of which is recorded * * *, executed by [Michigan Metals] and the Grantor herein[.]" *Page 6 
 {¶ 9} The 1971 deed also "reserved" for the "benefit of the Grantor's retained land, which retained land is leased to [Michigan Metals] by lease dated February 11, 1969, a short form of which was recorded * * *, the following:
 {¶ 10} "(a) an easement for ingress or egress over the premises conveyed hereby and over any new road which may be built in accordance with the terms and conditions set forth in said short form of lease; the Grantee [Federated] and its successors and assigns herein to assume all the obligations and have all the rights of Lessor set forth in short form of lease, and the Grantor and Lessee to assume all the obligations and have all the rights of the Lessee set forth in such short form of lease, with respect to such easements[.]"
 {¶ 11} The 1971 deed further provided that "the new road, if constructed, shall be located in and upon the following 60-foot strip of land[.]" It then lists the coordinates of the easement.[2]
 {¶ 12} On September 10, 1976, Builders/Allied sold the rear 19.97 acres (leased by Michigan Metals) to Mt. Elliot Properties of Ohio (the "Mt. Elliot deed"). The Mt. Elliot deed conveyed the property "together with the following easements," the third one being: "Easements for sanitary sewer and ingress and *Page 7 
egress reserved by [Builders/Allied] in the deed to Federated Department Stores, Inc., dated May 10, 1971 * * *."
 {¶ 13} In 1983, Ferrous leased the rear 19.97 acres (it now owns) from Mt. Elliot Properties. The Memorandum of Lease stated that "Lessor claims title to the premises which are the subject of said Lease through documents recorded in [the Mt. Elliot deed]." Since 1983, Ferrous has operated a steel processing plant on the property.
 {¶ 14} In separate transactions in 1988, Federated split the front 18.75 acres as follows: it sold 4.34 acres to the County and 14.41 acres (now the Gateway property) to GC Acquisition Corporation.
 {¶ 15} The County deed gives the "Legal Description of the Access Road," specifying the coordinates of the road and stating that it begins on Memphis Avenue, is 60 feet wide, and contains 1.282 acres.
 {¶ 16} The Purchase and Sales Agreement between Federated and the County further states that the County was granted a "perpetual easement and right-of-way for use * * * over the Access Road for two-way vehicular ingress to and egress from the Premises and Memphis Avenue (the `Access Easement') in common with Federated * * * and others who were granted or who take under one with a recorded right to use the Access Easement."
 {¶ 17} The GC Acquisition deed describes the 14.41 acres purchased by GC Acquisition in part as "6.00 feet to an iron pin in the Southwesterly line of a 60-foot *Page 8 
wide strip of land for an Ingress-Egress Easement and Sanitary Sewer Easement as recorded in [the 1971 deed]."
 {¶ 18} In March 1995, Ferrous purchased the rear property it had been leasing (the "Ferrous deed"). The Ferrous deed specifically conveys, inter alia, the property to Ferrous "TOGETHER WITH easement for sanitary sewer and ingress and egress reserved in the deed from [Builders/Allied] to Federated Department Stores * * * recorded May 10, 1971[.]"
 {¶ 19} In 2004, Gateway acquired its property from GC Acquisition Corp. The language in the Gateway deed mimics the language in the GC Acquisition Corp. deed, describing the property in part as "6.00 feet to an iron pin in the Southwesterly line of a 60-foot wide strip of land for an Ingress-Egress Easement and Sanitary Sewer Easement as recorded in [the 1971 deed]."
 {¶ 20} After a dispute arose between the parties over the use and maintenance of the access road, Gateway filed a complaint against Ferrous in August 2006, alleging that Ferrous's "heavy truck traffic caused portions of the access road to lapse into a serious state of disrepair." Gateway demanded a declaratory judgment, injunctive relief, and money damages. Ferrous answered and raised several counterclaims, including a declaratory judgment that it had an express easement over the access road and that Gateway had an obligation to maintain it. *Page 9 
 {¶ 21} In November 2007, both parties filed motions for summary judgment. The trial court agreed with Gateway that "[e]ven if Ferrous could meet its burden" that there was an express easement created in the 1971 deed, "the easement terminated when the lease agreement between Builders and Michigan Metals expired." The trial court then granted summary judgment to Gateway, finding there was no express easement after the Short Form Lease expired, and denied summary judgment to Ferrous. The trial court also granted summary judgment to Gateway on Ferrous's claim that Gateway breached its covenant to maintain the access road, since it found that there was no easement.[3]
 {¶ 22} It is from this judgment that Ferrous filed a notice of interlocutory appeal, raising five assignments of error for review.
 {¶ 23} Ferrous's first two assignments of error allege the trial court erred when it granted summary judgment to Gateway on the issue of whether Ferrous had an express easement (and denied summary judgment to Ferrous on this issue). Ferrous's third and fourth assignments of error allege that the trial court erred when it granted summary judgment to Gateway on Ferrous's claim that *Page 10 
Gateway breached its covenant to maintain the easement (and denied summary judgment to Ferrous on this issue).
 {¶ 24} Ferrous's fifth assignment of error, however, raises an issue that is not ripe for review, since in it Ferrous contends that the trial court erred when it denied its summary judgment motion. Thus, this court will not address Ferrous's fifth assignment of error.
 Summary Judgment Standard of Review {¶ 25} We review an appeal from summary judgment under a de novo standard. Baiko v. Mays (2000), 140 Ohio App.3d 1, 10. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.Northeast Ohio Apartment Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188, 192. Civ. R. 56(C) provides that before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel.Duganitz v. Ohio Adult Parole Auth. (1996), 77 Ohio St.3d 190, 191.
 {¶ 26} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment. Dresher *Page 11 v. Burt (1996), 75 Ohio St.3d 280, 292-293. If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.
 Express Easement {¶ 27} An easement is an incorporeal interest in land created by grant or prescription that entitles the owner of the easement to a limited use of the land in which the interest exists. Alban v. R.K. Co. (1968),15 Ohio St.2d 229, 231. The burden of proving an easement is on the party claiming it. Douglas v. Athens Masonic Temple Co. (1961),115 Ohio App. 353, 357.
 {¶ 28} Easements may be appurtenant or in gross. Warren v.Brenner (1950), 89 Ohio App. 188, 192. An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches and a servient tenement upon which the obligation or burden rests. Id. Easements appurtenant "run with the land," as opposed to easements in gross which convey to another a personal privilege to use the land but expire with the party to whom the privilege belongs. Id. at 195. "An easement is seldom considered to be in gross when it can be fairly construed to be appurtenant to some estate." Ohio Jurisprudence 3d, Easements Licenses, Section 12.
 {¶ 29} An easement may be created by any one of four methods: "by grant, implication, prescription, or estoppel." Kamenar RR. Salvage,Inc. v. Ohio *Page 12 Edison Co. (1992), 79 Ohio App.3d 685, 689. The existence of an express easement involves the construction of an instrument of conveyance and is, therefore, a matter of law if the terms of the instrument are clear and unambiguous. Hammond v. Klonowski (June 29, 2001), 6th Dist. No. E-00-044, citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241. An easement may be created or may arise expressly by grant, or by exception or reservation in a deed. See National Exchange Bank v.Cunningham (1889), 46 Ohio St. 575.
 {¶ 30} No particular "magic words" are required to create an express easement, as long as the intent of the parties is clear from the document and formal statutory requirements are met, namely, a signed writing, properly witnessed by two disinterested parties. SeeCincinnati Entertainment Assocs. Ltd. v. Bd. of Commrs. of HamiltonCty. (2001), 141 Ohio App.3d 803, 813; Lake White Community Assoc, Inc.v. Armour (1987), 4th Dist. No. 394. Once created, the easement must appear in the chain of title of the dominant parcel. Pence v. Darst
(1989), 62 Ohio App.3d 32, 37.
 {¶ 31} The Ferrous deed conveyed the 19.97 acres to Ferrous "TOGETHER WITH" the easement "for ingress and egress reserved" in the 1971 deed from Builders/Allied to Federated. Therefore, this court must determine if an express easement was created in the 1971 deed, and if that easement remained in the chain of title of the Ferrous property. If so, then Ferrous has an express *Page 13 
easement over Gateway's property. After reviewing the instruments conveying the properties in this case, we conclude that Ferrous does have an express easement, namely, the access road, over the Gateway property.
 {¶ 32} The 1971 deed between Builders and Federated specifically "RESERV[ED]" the easement for ingress and egress for the "benefit of the Grantor's retained land [now the Ferrous property]." Language in a deed "reserving" an easement for ingress and egress is an express easement.Lone Star Steakhouse Saloon of Ohio, Inc. v. Ryska 11th Dist. No. 2003-L-192, 2005-Ohio-3398, _26-29. We find no ambiguity in this reservation.
 {¶ 33} Gateway argues, and the trial court agreed, that "the only express easement ever granted was created in connection with a ten-year lease executed in 1969, and expired by its terms when the lease expired ten years later." Gateway further contends that the 1971 deed "preserved the existing limited easement rights[;] it did not modify them or create new, perpetual rights."
 {¶ 34} In support of this argument, Gateway claims the following emphasized language in the 1971 deed shows that it only "reserved enough rights in the front parcel" being purchased by Federated to ensure that Builders could satisfy its obligations to Michigan Metal pursuant to the 10-year express easement:
 {¶ 35} "RESERVING, HOWEVER, for the benefit of Grantor's [Builders'] retained land, which retained land is leased to [Michigan Metal], bylease *Page 14 dated February 11, 1969, a short form of which was recorded on February25, 1969 * * *." [Emphasis supplied by Gateway.]
 {¶ 36} The full paragraph states:
 {¶ 37} "RESERVING, HOWEVER, for the benefit of Grantor's [Builders'] retained land, which retained land is leased to [Michigan Metal], by lease dated February 11, 1969, a short form of which was recorded on February 25, 1969 in Volume 464, Pages 321 — 325, Cuyahoga County Records, the following:
 {¶ 38} "(a) an easement for ingress and egress * * *."
 {¶ 39} The clause emphasized by Gateway ("which retained land is leased to [Michigan Metal], by lease dated February 11, 1969, a short form of which was recorded on February 25, 1969 * * *") is a nonrestrictive clause. Nonrestrictive clauses describe part of a sentence, but are not essential to the meaning of the sentence (versus restrictive clauses that are necessary to understand the sentence). See Richard C. Wydick, Plain English for Lawyers (4 Ed. 1998), Commas, 91. Thus, if we were to remove the bolded nonrestrictive clause, which simply describes the retained land, it would state:
 {¶ 40} "RESERVING, HOWEVER, for the benefit of Grantor's retained land * * * an easement for ingress and egress."
 {¶ 41} The language of the 1971 deed plainly and unambiguously "reserves" the easement "for the benefit of the retained land." It does not reserve the *Page 15 
easement for the benefit of Michigan Metals (the Lessee), nor does it reserve it for only a period of ten years.
 {¶ 42} In fact, there is nothing in the 1971 deed that indicates an intent to limit the duration of the easement to the time period set forth in the Short Form Lease. Rather, the 1971 deed evinces that Builders and Federated simply referred to the Short Form Lease to obtaina legal description of the easement that had already been recorded in the Short Form Lease in 1969.
 {¶ 43} When the duration of an easement is not expressly stated, as in the case at bar, the duration depends upon a reasonable construction of the language to effect the reasonable intention of the parties deducible from the words employed, as applied to the surrounding circumstances.Hieatt v. Morris (1860), 10 Ohio St. 523; Malcuit v. Equity Oil GasFunds, Inc. (1992), 81 Ohio App.3d 236, 240. If Builders and Federated had intended to limit the duration of the easement to ten years, they would have expressly said so in the 1971 deed.
 {¶ 44} Again, we note that no particular language is required to create an easement by express grant so long as the intent of the parties is clear and the formal statutory requirements are met. CincinnatiEntertainment Assoc. v. Bd. of Commrs. (2001), 141 Ohio App.3d 803, 813. Here, the language of the instrument clearly delineates the dimensions, location, and purpose of the easement. As indicated above, the language of the 1971 deed shows a purpose to benefit the owner of the rear portion of the property. Such uses are inherently *Page 16 
beneficial to the land they function to serve. Thus, we agree with Ferrous that the express language clearly reveals the intent of the parties; i.e., to reserve a perpetual easement for ingress and egress over the access road.
 {¶ 45} In addition, the chains of title concerning all three parcels owned by Gateway, Ferrous, and the County, indicate the presence of the 60-foot easement or access road that was reserved in the 1971 deed.
 {¶ 46} Finding no ambiguity in the 1971 deed reserving an express easement over the access road, we conclude that the trial court erred in granting partial summary judgment in favor of Gateway on this question. Ferrous is entitled to summary judgment as a matter of law on the issue of express easement.
 Access Road Maintenance Obligations {¶ 47} In addition, we find the trial court erred when it granted summary judgment to Gateway on the issue of breach of covenant to maintain the easement. The 1971 deed expressly states that "Grantee [Federated] and its successors and assigned herein [Gateway] to assume all the obligations * * * set forth in such short form lease."
 {¶ 48} The obligations set forth in the short form lease indicate that Michigan Metals had to maintain the existing roadway if it was the sole user of the roadway. However, if Builders (the fee holder of the easement, which is now Gateway), "or others claiming under [Builders] use the existing roadway [the *Page 17 
access road]," then Builders must contribute "one-half the cost of such maintenance." Thus, we agree with Ferrous that since it is not the sole user of the road, Gateway has an obligation to contribute to its maintenance if it or others use it.
 {¶ 49} Accordingly, the trial court erred when it granted summary judgment to Gateway on this issue. We find that as a matter of law, Gateway has an obligation to contribute "one-half the cost" of maintaining the access road. Questions of fact remain, however, as to whether Gateway breached its covenant to maintain the easement and if so, how much that amount actually is.
 {¶ 50} Ferrous' four assignments of error that are properly before this court are sustained. Having found merit to this appeal, we reverse the judgment of the Cuyahoga County Court of Common Pleas and remand for further proceedings consistent with this opinion.
It is ordered that appellants recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 18 
MELODY J. STEWART, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Ferrous claims that the easement in the Short Form Lease was over the entire Gateway property. However, the Short Form Lease plainly grants an easement "over the existing road," and any new road "in place of, and in substitution for" the existing road.
[2] Ferrous argued in its summary judgment motion that this "modified the easement language of the Short Form Lease so as to designate the location of the Easement to a specific 60-foot wide strip of land * * *, rather than the entire Gateway Parcel." But it is clear from the record that the easement granted in the Short Form Lease was the 60-foot wide strip of land that was the original access road.
[3] The trial court also found there were issues of fact remaining regarding easement by prescription and an easement by necessity, issues relating to allegations of interference with easement rights, issues relating to the title of land containing Ferrous's sign, issues relating to the Northwest/Abrams easement, and issues relating to allegations of interference with water flow. *Page 1