[Cite as *Acorn Dev., L.L.C. v. Sanson Co.*, 2022-Ohio-2576.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ACORN DEVELOPMENT, LLC,  :

    Plaintiff-Appellant,  :

                             Nos.  110530 and 111003

    v.  :

THE SANSON COMPANY, ET AL.,  :

    Defendants-Appellees.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  July 28, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-932231

---

### *Appearances:*

The Law Offices of David M. Leneghan, David M.
Leneghan, and K. Scott Carter, *for appellant.*

Hanna, Campbell & Powell, LLP, J. Anthony Coleman,
and R. Brian Borla, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1}  Plaintiff-appellant Acorn Development, LLC ("Acorn"), appeals the trial court's judgment granting defendant-appellee The Sanson Company's ("Sanson"), motion for judgment on the pleadings.  For the reasons that follow, we affirm the trial court's judgment.

## Procedural History and Factual Background

{¶ 2} Both Acorn and Sanson run commercial businesses with bases of operation in the city of Cleveland. Acorn owns property known as parcel no. 123-12-010 ("Parcel 10"). Parcel 10 contains a large building that stretches to the northern, eastern, and southern boundaries of the property, with loading docks on the south side of the building that are used to receive and make shipments. Parcel 10 is effectively landlocked and can be accessed from a driveway off of East 37th Street. The driveway is owned by Sanson.

{¶ 3} Sanson and related entities own property designated permanent parcel nos. 123-12-005 ("Parcel 5"), 123-12-006 ("Parcel 6"), 123-12-007 ("Parcel 7"), 123-12-008 ("Parcel 8"), and 123-12-009 ("Parcel 9"). Parcel 9 contains the driveway that abuts Parcel 10 on the south side.

{¶ 4} In April 2020, Acorn filed suit against Sanson alleging tortious interference with Acorn's right to use the driveway on Parcel 9 (the "easement"). On June 3, 2020, Sanson filed an answer and also counterclaimed in quiet title. Specifically, in its counterclaim, Sanson argued that the easement in question was expressly created in a lease, and that the lease, as well as the easement, expired on October 14, 2017. Sanson also referenced prior litigation in two cases both of which found that there was an easement over Parcel 9 for the benefit of Parcel 10. Sanson argued that the findings in those cases were no longer relevant because the easement had expired. Sanson requested declaratory judgment and/or a judicial determination quieting title to Parcel 9.

{¶ 5} In December 2020, Acorn filed its first amended complaint adding a claim that Sanson had violated an implied easement over Parcel 9, in addition to the tortious interference claim. Sanson renewed its counterclaim, arguing that any easement had expired and was no longer in effect.

{¶ 6} On March 5, 2021, Sanson filed a motion for judgment on the pleadings to the amended complaint, which Acorn opposed by motion on April 2, 2021. On April 28, 2021, the trial court granted Sanson's motion "for the reasons argued in the motion." Acorn filed a notice of appeal on May 26, 2021.

{¶ 7} On October 1, 2021, this court remanded the case to the trial court noting:

> In this case, the defendant counterclaimed for a declaratory judgment on the existence of an easement. The judge granted the defendant's motion for judgment on the pleadings "for the reasons argued in the motion." However, in a declaratory judgment action, the trial court must declare all the of the parties' rights and obligations in order to constitute a final, appealable order. *Klocker v. Zeiger*, 8th Dist. Cuyahoga No. 92044, 2009-Ohio-3102. Referencing the reasons in the dispositive motion does not do that. Accordingly, in order to avoid a possible jurisdictional impediment, this court remands the case to the trial court for a full declaration of rights and obligations by October 29, 2021.

{¶ 8} After remand, the trial court granted Sanson's motion for judgment on the pleadings, noting:[1]

> The amended complaint essentially alleges that Sanson was interfering with Acorn's easement — "implied or otherwise" — and seeks damages and "a finding that Plaintiff [Acorn] has easement rights over [Parcel 9] [owned by Sanson] for the benefit of [Parcel 10]."

---

[1] The trial court's journal entry has been edited solely for consistency with the conventions used thus far in this opinion.

By its counterclaim, Sanson seeks to quiet title in its favor with a declaration "that it owns [Parcel 9] free and clear of any easements and that the [Acorn], has no legal rights or interests in [Parcel 9]."

Sanson then filed the motion for judgment on the pleadings currently under consideration. The gist of Sanson's argument is that Acorn's easement, as declared in the 2014 litigation, arose from the 90-year lease and it therefore expired in 2017. Additionally, because the easement was express it cannot also be considered to be implied, i.e., the easement did not become implied upon the expiration of the 90-year express easement.

Sanson's arguments and authorities are persuasive. Accordingly, Sanson's motion for judgment on the pleadings — including the counterclaim for declaratory judgment and Acorn's complaint seeking a finding that Plaintiff has easement rights over [Parcel 9] for the benefit of [Parcel 10] — is granted and the following declaration of the rights and obligations of the respective parties is made:

> 1. [Acorn's] express easement as declared in case numbers CV 02 475046 and CV 14 82668 was created by the 1927 lease and it expired in October 2017;
>
> 2. [Acorn] does not have an implied easement over [Sanson's] property, in particular [Parcel 9], for access to, or any other use of, [Parcel 10]; and
>
> 3. [Sanson's] title to [Parcel 9] is free and clear of any easements for the benefit of [Parcel 10].

{¶ 9} Acorn appeals and assigns the following errors for our review.

## Assignment of Error No. 1

The Trial Court erred as a matter of law when it considered facts outside the pleadings when it granted Defendant/Appellee's Motion for Judgment on the Pleadings

## Assignment of Error No. 2

The Trial Court erred as a matter of law when it found Plaintiff/Appellant did not have an easement over

Defendant/Appellee's property to access Plaintiff/Appellant's property.

## Law and Analysis

{¶ 10} For ease of discussion, we will address the assignments of error out of order. In its second assignment of error, Acorn argues that the trial court erred finding the easement over Parcel 9 had expired based on a 1927 lease and should not have granted Sanson's motion for judgment on the pleadings.

### *Standard of Review*

{¶ 11} Preliminarily, a judgment on the pleadings deals solely with issues of law, therefore our review is de novo. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8, citing *Rayess v. Educational Comm. For Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18. De novo review requires an independent examination of the record and law without deference to the trial court's decision. *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, 134 N.E.3d 903, ¶ 48 (8th Dist.), citing *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs. Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443, ¶ 22, citing *Demeraski v. Bailey*, 2015-Ohio-2162, 35 N.E.3d 913, ¶ 11 (8th Dist.).

{¶ 12} A judgment on the pleadings limits our review "solely to the allegations in the complaint and answer, as well as any material attached as exhibits to those pleadings." *Schmitt v. Educational Serv. Ctr.*, 2012-Ohio-2208, 970 N.E.2d 1187, ¶ 10 (8th Dist.), citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio

St.3d 565, 569, 664 N.E.2d 931 (1996). Further, we must consider the factual allegations in the complaint as true, although unsupported conclusions are insufficient to defend against the motion. *Pincus v. Dubyak*, 8th Dist. Cuyahoga No. 110135, 2021-Ohio-3034, ¶ 17.

{¶ 13} When a defendant requests judgment on the pleadings, it is appropriate to grant the motion when the plaintiff's complaint has failed to allege facts that, if true, would establish the defendant's liability. *Id.* at ¶ 17, citing *Walters v. First Natl. Bank of Newark*, 69 Ohio St.2d 677, 433 N.E.2d 608 (1982). In other words, to grant a motion for judgment on the pleadings, the court must determine that no material factual issues exist and that the moving party is entitled to judgment as a matter of law. *Id.*, quoting *Midwest Pride IV, Inc.* at 570.

Express or Implied Easement

{¶ 14} In the instant case, the parties agree to the existence of an easement. However, the parties dispute whether the easement was created by express grant or by implication and whether it continues to exist. Nonetheless, the parties do not dispute the underlying facts giving rise to the litigation. Sanson does not dispute that it blocked Acorn's access to the loading docks. Sanson argues it owns Parcel 9 free of any easement and may use its property as it chooses. In contrast, Acorn argues that it has an easement implied by prior use or implied by necessity over Parcel 9 that was not terminated by the lease and, therefore, it still has a right to use the driveway.

**{¶ 15}** We must first, then, examine the nature of easements. By definition, an easement "is a property interest in the land of another that allows the owner of the easement 'a limited use of the land in which the interest exists.'" *Merrill Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. Summit No. 24943, 2010-Ohio-1827, ¶ 10, quoting *Colburn v. Maynard*, 111 Ohio App.3d 246, 253, 675 N.E.2d 1333 (4th Dist.1996). "An express easement may be created by grant, or by reservation or exception in a deed." *Id.*, citing *Gateway Park, LLC v. Ferrous Realty, Ltd.*, 8th Dist. Cuyahoga No. 91082, 2008-Ohio-6161, ¶ 29. The grant may also be included in the language of a lease or similar document. *Kamenar R. S., Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 689, 607 N.E.2d 1108 (3d Dist.1992), citing 36 Ohio Jurisprudence 3d, Easements and Licenses, Section 18 (1982).

**{¶ 16}** In addition to an express easement, an easement may be created by (1) implication; (2) prescription; or (3) estoppel. *Miller v. Romanauski*, 8th Dist. Cuyahoga No. 100120, 2014-Ohio-1517, ¶ 17 citing *Gateway Park, LLC* at ¶ 29. In the instant case, Acorn claims that it has an easement by implication, or an implied easement.

**{¶ 17}** Initially, we note implied easements are generally disfavored because they are an exception to the general rule that written instruments should speak for themselves. *Ciski v. Wentworth*, 122 Ohio St. 487, 495, 172 N.E. 276 (1930). Furthermore, implied easements create a right of way over land that could have been granted by an express easement. Therefore, "one may not simultaneously have an

easement over another's land by express grant and an easement implied by necessity." *Tiller v. Hinton*, 19 Ohio St.3d 66, 69, 482 N.E.2d 946 (1985).

{¶ 18} Nevertheless, an easement will be implied when a party shows that 1) there was the severance of the unity of ownership in an estate; 2) that before the estate was separated, the use that gives rise to the easement has been "so long continued and obvious or manifest as to show that it was meant to be permanent"; 3) that the easement is "reasonably necessary to the beneficial enjoyment of the land granted or retained"; and 4) that the servient use was continuous as opposed to temporary or occasional use only. *Ciski* at paragraph one of the syllabus.

{¶ 19} Courts have further delineated easements by implication, finding there are easements implied by necessity and easements implied by prior use. Both look at the issue of necessity, finding that for an easement to be implied by necessity, the plaintiff must show "strict necessity" while for an easement to be implied by prior use, the plaintiff need only show "reasonable necessity." *Shangrila Ohio, L.L.C. v. Westridge Realty Co.*, 8th Dist. Cuyahoga No. 99784, 2013-Ohio-3817, ¶ 19, citing *Tiller* at 69. "Strict necessity" means that the easement is "strictly necessary in order for the owner of the dominant tenement to have any use and enjoyment of his estate." *Panini, Inc. v. 1078 Old River Rd., Inc.*, 8th Dist. Cuyahoga No. 74124, 1999 Ohio App. LEXIS 2299, 12 (May 20, 1999), citing *Tiller* at 72. In contrast, an easement implied by prior use must be "reasonably necessary to the beneficial enjoyment of the dominant estate." *Id.* The party claiming that an easement exists has the burden of proving it. *Gateway Park, LLC*, 8th Dist.

Cuyahoga No. 91082 at ¶ 27, citing *Douglas v. Athens Masonic Temple Co.*, 115 Ohio App. 353, 357, 185 N.E.2d 316 (4th Dist.1961).

{¶ 20} Easements may be appurtenant or "in gross." An easement "in gross" conveys to another "a personal privilege to use the land" but that privilege expires "with the party to whom the privilege belongs." *Id.* at ¶ 28, citing *Warren v. Brenner*, 89 Ohio App. 188, 195, 101 N.E.2d 157 (9th Dist.1950). In sum, an easement in gross is held by an individual, exists independently of any ownership of land, and is not transferrable to subsequent owners. *Merrill Lynch*, 9th Dist. Summit No. 24943 at ¶ 11. "'An easement is seldom considered to be in gross when it can be fairly construed to be appurtenant to some estate.'" *Gateway Park LLC* at ¶ 28, quoting 36 Ohio Jurisprudence 3d, Easements & Licenses, Section 12.

{¶ 21} In contrast, and at issue in this case, are easements appurtenant. An easement appurtenant attaches to the property and requires a dominant estate and a servient estate. The dominant estate receives the benefit of the easement, while the servient estate is burdened by the easement. *Johnson v. New Direction IRA F.B.O King C. Lam*, 8th Dist. Cuyahoga No. 106628, 2018-Ohio-4608, ¶ 32, citing *Gateway Park* at ¶ 28. Essentially, the dominant estate acquires an easement to use a portion of property owned by the servient estate, which bears the burden of the use.

{¶ 22} Central to this case is a 1927 lease between Nickel Plate Development Company ("Nickel Plate"), The City Ice & Fuel Company ("City Ice"), and The New York, Chicago & St. Louis Railroad Company (the "Railroad"). At the time, Nickel

Plate owned both Parcels 9 and 10, and intended to lease Parcel 10 to City Ice. City Ice accepted the lease on the condition that the Railroad would provide certain services. The lease was issued on October 15, 1927, for a period of 90 years, described the boundaries of Parcel 10, and noted the intent to create two 60-foot driveways and one 40-foot driveway bordering the parcel on three sides. Parcel 9 contained one of the 60-foot driveways.

{¶ 23} The lease stated:

That the Lessor has agreed to let and hereby does let unto the Lessee, and the Lessee has agreed to take, and hereby does take and hire from the Lessor, for the term, at the rent, and upon the covenants, conditions, limitations and agreements hereinafter contained, the premises described as follows:

\* \* \*

Together with the right in common with the Lessor, other Lessees, its successors and assigns to use the proposed forty foot and the two sixty foot driveways hereinbefore referred to.

{¶ 24} No particular words are necessary to create an easement; however, the words used in the agreement and the circumstances surrounding it must be examined to determine whether an easement is created. *Kamenar R. S., Inc.*, 79 Ohio App.3d at 690, 607 N.E.2d 1108. An easement is created as long as the intent of the parties is clear from the document and the formal statutory requirements are met, i.e., a writing, that is properly witnessed by two disinterested parties. *Gateway Park LLC*, 8th Dist. Cuyahoga No. 91082 at ¶ 30.

{¶ 25} Sanson argued, and the trial court agreed, that an express easement was granted by the 1927 Lease that expired by its terms after 90 years. The language

in the lease expressly grants an easement to the occupier of Parcel 10 to use Parcel 9, "for the term, at the rent, and upon the covenants, conditions, limitations and agreements hereinafter contained * * *." The term of the lease is plainly defined as 90 years. Furthermore, there is no subsequent deed or other grant attached to the pleadings that extends the easement beyond that period.

{¶ 26} Acorn suggests that its right to the easement is distinct because it is the owner of Parcel 10 rather than the lessee. A lessee, the company argues, would be bound by the terms of the lease but an owner would not. However, that argument fails to recognize the nature of the easement. Whether express or implied, an easement appurtenant is tied to the land, while an easement in gross is tied to a particular person. "An easement is appurtenant when the language of the instrument creating it and the surrounding facts indicate that it was created for the benefit of the land and not just to form a personal right benefit." *Goralske v. Parsell*, 2016-Ohio-531, 59 N.E.3d 730, ¶ 12 (3d Dist.), citing *Deshon v. Parker*, 49 Ohio App.2d 366, 361 N.E.2d 457 (9th Dist.1974). In the instant case, the 1927 Lease created an easement appurtenant to the land, creating a dominant estate in Parcel 10 and a servient estate in Parcel 9. Acorn's status as the owner of Parcel 10 does not give it more rights in relation to Parcel 9 than that expressed in the granting document.

{¶ 27} Therefore, based on the foregoing, we find that the easement created in the 1927 Lease expired at the end of the lease term in October 2017.

{¶ 28} Nevertheless, Acorn argues that their easement does not arise out of the 1927 Lease but is an implied easement of prior use or of necessity. Acorn alleges that as an owner of the property, and not a lessee, they are not bound by the terms of the 1927 Lease. As noted, we disagree; further, Acorn's argument is unavailing.

{¶ 29} As we have noted, an implied easement arises in situations where an obvious use exists but an easement was not expressly granted. As a result, "one may not simultaneously have an easement over another's land by express grant and an easement implied by necessity." *Tiller*, 19 Ohio St.3d at 69, 482 N.E.2d 946. Undoubtedly, the lease created an express easement. Acorn is precluded from arguing that an implied easement of necessity or prior use was created.

{¶ 30} Accordingly, we overrule Acorn's second assignment of error.

{¶ 31} In its first assignment of error, Acorn alleges that the trial court erred because it considered facts outside of the pleadings. Specifically, Acorn alleges that the trial court considered litigation that occurred in 2002 despite there being "no reference" to the 2002 litigation in the pleadings.

{¶ 32} A trial court, when ruling on a motion for judgment on the pleadings is limited in its review "solely to the allegations in the complaint and answer, as well as any material attached as exhibits to those pleadings." S*chmitt*, 8th Dist. Cuyahoga No. 97605 at ¶ 10, citing *Midwest Pride IV*, 75 Ohio St.3d at 569, 970 N.E.2d 1187. However, not all attachments are equal. While Civ.R. 10(C) qualifies a written instrument attached to a complaint or answer as part of the pleadings, "written instrument" has a specific meaning. *Edwards v. Kelley*, 2021-Ohio-2933, 178

N.E.3d 55, ¶ 9 (8th Dist.). A "'[w]ritten instrument' has primarily been interpreted to include documents that evidence the parties' rights and obligations, such as negotiable instruments, 'insurance policies, leases, deeds, promissory notes, and contracts.'" *Id.*, quoting *State ex rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, 110 N.E.3d 1275, ¶ 2, citing *Inskeep v. Burton*, 2d Dist. Champaign No. 2007 CA 11, 2008-Ohio-1982, ¶ 17, and 1 Klein & Darling, Baldwin's Ohio Practice 744-745 (2004). Court filings attached to a pleading are not "written documents" and may not be considered. *Id.*, citing *Husted*, citing *State ex rel. Vandenbos v. Xenia*, 2d Dist. Greene No. 14-CA-14, 2015-Ohio-35, ¶ 14 (orders and opinions from prior cases between the parties are not part of the pleadings).

{¶ 33} Here, we note that Acorn summarized events in a 2014 case involving the parties in its amended complaint and attached a copy of a journal entry from that litigation in support. Further, Sanson referenced the prior litigation more generally in its original answer and counterclaim noting that "any prior judicial determination of easement rights in [Parcel 9] was made when the 90-year lease was in effect." The trial court referenced the 2002 case, as follows

> Also in the September 9, 2015, judgment entry, the court noted a finding from 2002 litigation involving Sanson, as the plaintiff, and Acorn's predecessor in interest, Gorbett Enterprises, Inc., dba Gateway Cold Storage. That lawsuit was designated as number CV 02 475046 in this court. In that case, the court found that Gateway Cold Storage did have an express easement that arose from the 90-year lease in 1927. The court in the 2014 case then found that the easement still existed because Sanson was bound by the result in the 2002 case, which was never appealed.

{¶ 34} From the foregoing, it is clear that the trial court considered the journal entry in making its decision, including its references to the 2002 case. This was improper under *Husted*. However, we are mindful of Civ.R. 61 which sets the standard for harmful error stating:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 35} In the instant case, while the trial court erred in considering the journal entry in the prior case, the trial court nonetheless came to the correct conclusion in granting Sanson's motion for judgment on the pleadings. The 1927 lease established an express easement that expired in 2017 precluding the existence of an implied easement. Acorn could have, but did not, allege that the implied easement arose after the expiration of the lease. Appellant chose to base its implied easement argument on its use of Parcel 9 since the 1920s. However, during that period, an express easement existed, so by law an implied easement could not have been created. *Tiller,* 19 Ohio St.3d at 69, 482 N.E.2d 946. Consequently, Acorn has pled no set of facts that would entitle it to relief. Although, the trial court's reliance on the journal entries was error, its ultimate conclusion was correct. Therefore, the error did not affect a substantial right and was harmless as a matter of law.

{¶ 36} Accordingly, we overrule Acorn's first assignment of error.

**{¶ 37}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, J., CONCURS;
SEAN C. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., DISSENTING:

**{¶ 38}** I respectfully dissent. What we are discussing is a tenant's right of way over a shared driveway owned by the landlord, a particular type of easement. "Right of way" "'sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed'" giving rise to an interest in the land upon which the right-of-way passage sits. *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 15, quoting *Joy v. St. Louis*, 138 U.S. 1, 44, 11 S.Ct. 243, 34 L.Ed. 843 (1891); *McCotter v. Barnes*, 247 N.C. 480, 485, 101 S.E.2d 330 (1958); *Quinn v. Pere Marquette Ry. Co.*, 256 Mich. 143, 150, 239 N.W. 376 (1931); and *Miro v. Superior*

*Court of San Bernandino Cty.*, 5 Cal.App.3d 87, 96, 84 Cal.Rptr. 874 (4th Dist.1970). In this case, the 1927 lease agreement granted City Ice the right of passage over an existing driveway owned by the landlord. "A mere naked right to pass and repass over the land of another, a use which excludes all participation in the profits of the land, is not, in any proper sense, an interest or estate in the land itself. Such a right is in its nature personal; it attaches itself to the person of him to whom it is granted, and must die with the person." *Geffine v. Thompson*, 76 Ohio App. 64, 67, 62 N.E.2d 590 (8th Dist.1945), citing *Boatman v. Lasley*, 23 Ohio St. 614, 618 (1873).

{¶ 39} Thus, there are generally two kinds of easement: an easement appurtenant that runs with the land, and an easement in gross that is limited to the person to whom the easement was granted. *Gateway Park, LLC v. Ferrous Realty, Ltd.*, 8th Dist. Cuyahoga No. 91082, 2008-Ohio-6161, ¶ 28, citing *Warren v. Brenner*, 89 Ohio App. 188, 101 N.E.2d 157 (9th Dist.1950). Generally, an easement in gross is held by an individual, exists independently of any ownership of land, and is not transferrable to subsequent owners. *Merrill Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. Summit No. 24943, 2010-Ohio-1827, ¶ 11. As will be discussed, the easement at issue in this case does not neatly fit into either category.

{¶ 40} Sanson frames the discussion in terms of the 1927 lease agreement creating an easement appurtenant with a 90-year duration based on the terms of the lease, but that argument is misplaced. At the time of the 1927 lease agreement,

Nickel Plate owned both Parcel 9 and Parcel 10. City Ice was granted access to the leased building on Parcel 10 through the shared driveway. As long as the dominant and subservient estates belong to one owner, no easement can exist or be established. 36 Ohio Jurisprudence 3d, Easements and Licenses in Real Property, Section 2, citing *W. Edn. Soc. v. Huntington*, 15 Ohio N.P. (N.S.) 481, 28 Ohio Dec. 483, 1914 WL 1288 (Super.Ct. 1914); *One Harbor Fin. Ltd. Co. v. Hynes Properties, LLC*, 884 So.2d 1039, 1044 (Fla.App.2004).[2] The right to use the driveway was not an easement at the time of its creation, nor did it grant City Ice any ownership rights to the property upon which the right-of-way passage existed. And further, "an easement appurtenant 'arises only when [the easement] holder owns a dominant estate at the time of the creation of the easement.'" *Snyder v. Monroe Twp. Trustees*, 110 Ohio App.3d 443, 450, 674 N.E.2d 741 (2d Dist.1996), quoting Bruce & Ely, The Law of Easements and Licenses in Land (Rev.Ed.1995) 2-8, Section 2.01[4]; 36 Ohio Jurisprudence 3d, Easements and Licenses in Real Property, Section 2 (It is generally understood that "the owner of the land cannot have an

---

[2] That rule is absolute. Even if a valid easement does exist, under the merger doctrine "if the dominant and servient tenements at any time are united in a common ownership, any easement which may have previously existed is ipso facto extinguished." *Huntington* at 488 (concluding that the plaintiff had a right to an implied easement upon the sale of the unified property to separate buyers); *accord Maune v. Beste*, 356 S.W.3d 225, 230 (Mo.App.2011); *Millson v. Laughlin*, 217 Md. 576, 583, 142 A.2d 810 (1958). Once extinguished, an easement appurtenant must be reestablished should the common ownership become split again. *See, e.g., Shah v. Smith*, 181 Ohio App.3d 264, 2009-Ohio-743, 908 N.E.2d 983, ¶ 12 (1st Dist.) (although the original easement merged upon the unity in ownership, the doctrine does not preclude the establishment of a new easement upon sale of one of the properties).

easement in one's own estate in fee."), citing *Rex v. Hartman*, 16 Ohio Law Abs. 573, 1934 WL 1662 (Ct.App. 9th Dist. Medina 1934).

{¶ 41} City Ice did not own the dominant estate, and Nickel Plate as the owner of the dominant and servient estates (even if the parcels existed independent of each other in 1927), could not have granted itself an easement appurtenant on its own property on behalf of its tenant. *See, e.g., Tower 10, LLC v. 10 W Broad Owner, LLC*, 2020-Ohio-3554, 154 N.E.3d 1060, ¶ 7 (10th Dist.) (landlord created easement for the express benefit of itself and its tenants).

{¶ 42} On the other hand, an easement in gross is held by an individual and exists without regard to that person's ownership of the land. Although this better describes the easement at issue, an easement in gross typically cannot be transferred. There is no dispute that the 1927 lease that included the right of passage for the tenant over the landlord's driveway, was transferable to City Ice's successors or could be assigned to another person or entity. The prohibition against the transferability of an easement in gross, however, is not absolute.

{¶ 43} As recognized in *Geffine v. Thompson*, 76 Ohio App. 64, 68, 62 N.E.2d 590 (8th Dist.1945), an easement in gross may be transferrable to successors or assigns in certain commercial settings — in effect creating a third category dealing with right-of-way easements granted to a person or corporation. *Consol. Gas Transm. Corp. v. Miller*, 5th Dist. Holmes No. 378, 1988 Ohio App. LEXIS 1757 (Apr. 25, 1988). "Easements in gross of a commercial character, such as gas pipelines and railroad rights-of-way, are alienable property interests" but still retain

the distinction, between an easement in gross and easement appurtenant, in that the easement in gross, even if assignable, is limited to the person holding the right and does not run with the land. *See generally id.* Once the person holding the easement abandons it, the easement ceases to exist.

{¶ 44} The 1927 lease granting City Ice and its successors or assigns the right to use a driveway is a red herring; its existence has no bearing on the question raised in this case of whether an implied easement exists in favor of Acorn.[3] On this point, Sanson has considered the parties in the incorrect role with relation to their respective position in the lease (who is the tenant and who the landlord?).

{¶ 45} According to the allegations in the amended complaint, Sanson acquired title to Parcel 9 through a land sale purchase agreement in 1998. Although it is not clear from the limited record, it appears that an apparent successor in interest to the 1927 lease agreement (Gorbert Enterprises) occupied the structure

---

[3] Any easement established in the 1927 lease would not exist independent of the lease agreement itself. In order to be valid, the tenant of Parcel 10 would have to prove an unbroken chain of assignments of the lessee's interest dating back to City Ice & Fuel Company. *Zagrans v. Elek*, 9th Dist. Lorain No. 08CA009472, 2009-Ohio-2942, ¶ 9 ("When an easement is set forth in a written agreement, it is subject to the rules of contract law."), citing *Wimmer Family Trust v. FirstEnergy*, 9th Dist. Lorain No. 08CA009392, 2008-Ohio-6870, ¶ 12, and *Beaumont v. FirstEnergy Corp.*, 11th Dist. Geauga No. 2004-G-2573, 2004-Ohio-5295, ¶ 18-19. Once City Ice, or someone in its shoes, walks away from 1927 lease agreement, the tenant's right to use the driveway ceases. *Myers v. E. Ohio Gas Co.*, 51 Ohio St.2d 121, 124, 364 N.E.2d 1369 (1977), fn. 3 (an easement established by the lease can be terminated at will by the lessee, but not the lessor); *accord Gateway Park, LLC v. Ferrous Realty, Ltd.*, 8th Dist. Cuyahoga No. 91082, 2008-Ohio-6161, ¶ 43 (if the parties to the lease agreement "intended to limit the duration of the easement to ten years, they would have expressly said so in the 1971 deed" at the time of transfer).

located on Parcel 10 at the time Sanson purchased Parcel 9.[4]  Thus, Sanson potentially took title to Parcel 9, subject to the tenant's right to use its driveway.

{¶ 46} In 2007, however, Acorn acquired Parcel 10 through a quitclaim deed from the successor in interest of Nickel Plate.[5]  There is no evidence, or even an allegation, that Acorn purchased Parcel 10 subject to an existing tenant in possession of the building under the terms of the 1927 lease agreement.  Acorn was not assigned City Ice's interest to the 1927 lease agreement as the lessee, nor is Acorn a successor in interest to City Ice.  Acorn is a successor in interest to the landlord of that lease agreement, Nickel Plate, being in the same position as Sanson.  Nickel Plate's interest as landlord, if the 1927 lease continued to be an enforceable contract at that time, was split between Acorn and Sanson.  Based on the lack of any allegations in the amended complaint, we must presume that as of 2007 there was no tenant claiming entitlement to separately enforce the 1927 lease terms against

---

[4] Acorn purchased the property from a successor in interest to Nickel Plate, necessarily meaning there was no intervening sale of Parcel 10 and Gorbert merely leased the property from Nickel Plate's successor in interest.

[5] If an owner of two parcels of land subjects one of them to an easement in favor of the other and then sells the dominant parcel without providing for that easement in the grant of sale, and "the enjoyment of such easement is reasonably necessary to the beneficial enjoyment of the parcel granted, it may reasonably be inferred that the parties mutually intended there should have been a grant of such easement." *Tiller v. Hinton*, 19 Ohio St.3d 66, 69, 482 N.E.2d 946 (1985), quoting *Renner v. Johnson*, 2 Ohio St.2d 195, 199, 207 N.E.2d 751 (1965).  The grantee has a right to require reformation of the deed to establish the mutual intent of the parties, and therefore, the grant of such an easement will be implied. *Id.*

Acorn and an express easement against Sanson, both of whom stood in the landlord's shoes, not City Ice's.

{¶ 47} For our purposes, even assuming the existence of an easement created through the lease agreement, as of 2007, the 1927 lease terminated because no tenant leased the property from any successor in interest to Nickel Plate as an assignee of the 1927 lease agreement. After that time, Sanson acquiesced to Acorn's continued use of the driveway on two separate, but distinct, occasions: between 2007 and 2014 when the earlier action was filed and Acorn's easement was declared valid,[6] and again after 2017 based on the allegation that Sanson made no efforts to preclude Acorn from accessing Parcel 10 until an unknown date that was "recent" to the filing of the 2020 complaint.

{¶ 48} Sanson's argument, as it pertains to entitlement to a judgment on the pleadings, is focused on the claim that the 1927 lease terminated in 2017 as did Acorn's express easement based on the 90-year term of the lease granted to City Ice. As Sanson discussed in its motion for judgment on the pleadings: "If a party is contending that an easement is created expressly, it is necessary that a grant be included in the language of a deed, lease, or the like." *Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 689 (3d Dist.1992), citing 36 Ohio

---

[6] The record from the 2014 action is not part of the appellate record in this case. It cannot be determined whether Acorn filed a complaint to enforce an express easement that included an argument in the alternative that the easement was implied — as was the nature of the complaint and amended complaint filed in the underlying action. Although the entry from the 2014 action was attached to Acorn's complaint, that entry does not establish whether the court determined that the easement was express or implied; it simply declared the existence of an easement.

Jurisprudence 3d (1992), Easements and Licenses, Section 18. Acorn alleges entitlement to a declaration that the easement is implied. Sanson claims the express easement precludes that relief, and thus the burden is on Sanson to demonstrate the existence of an express easement. Following the purchase and sale of Parcel 10 in 2007, the latest point in time in which the 1927 lease terminated through the sale of the property to Acorn without an existing tenant, and because Acorn is not a successor in interest or assignee of City Ice, there was no easement appurtenant permitting Acorn access to the disputed driveway. Acorn's use of the driveway arose through another mechanism.

{¶ 49} Acorn's opposition to the motion for judgment on the pleadings solely relied on a discussion of its entitlement to an implied easement. As such, Acorn preserved the issue for appellate review, and therefore, I cannot join the majority's decision to affirm. Sanson's entire argument is misplaced. Acorn does not, nor did it ever, have an express easement appurtenant entitling its use of Sanson's driveway. The only person or entity entitled to assert the right of way declared in the 1927 lease agreement is a successor of City Ice or an assignee to the 1927 agreement. Acorn is neither. There are issues of fact and law in need of resolution, and this matter should be remanded for further proceedings. For the foregoing reasons, I dissent.